In re the Matter of Cynthia A. Schultz and the Animal Lobby, Inc., Plaintiffs,

v.

Charles S. Sykes, Journal Broadcast Group, Inc. and Journal Sentinel, Inc., Defendants.

The Journal Sentinel, Inc., Creditor-Respondent,

v.

John R. Schultz, husband of Cynthia A. Schultz, Debtor-Appellant,†

Wisconsin Housing and Economic Development Authority, Garnishee.

Court of Appeals

*No. 00–2595. Submitted on briefs June 11, 2001.—Decided October 4, 2001.*

2001 WI App 260

(Also reported in 638 N.W.2d 76.)

† Petition to review denied 1-29-02.

On behalf of the debtor-appellant, the cause was submitted on the briefs of *John R. Schultz*, pro se.

On behalf of the creditor-respondent, the cause was submitted on the brief of *John R. Dawson, James L. Huston, Paul Bargren* and *Nicole A. Klemz*, of *Foley & Lardner*, Milwaukee.

Before Vergeront, P.J., Dykman and Lundsten, JJ.

¶ 1. DYKMAN, J. John R. Schultz appeals from an order of the circuit court concluding that fifty percent of his wages are subject to garnishment to satisfy a judgment held by Charles J. Sykes, Journal Broadcast Group, Inc., and Journal Sentinel, Inc., against his wife, Cynthia Schultz. John argues that his wages should be exempt from garnishment because he and his wife have a marital property agreement that classifies his wages as individual property. Alternatively, John asserts that the garnishment violates several of his constitutional rights. We conclude that John and Cynthia's marital property agreement is not binding on the Journal because it had no notice of the agreement, and that John's constitutional rights were not violated. We therefore affirm.

## I. Background

¶ 2. The underlying case supporting this garnishment action began as a claim for defamation by John Schultz's wife, Cynthia Schultz, and The Animal Lobby, Inc., against Charles J. Sykes, Journal Broadcast Group, Inc., and Journal Sentinel, Inc. The circuit court dismissed their claims as a sanction, however, after

finding that Cynthia had attempted to suborn perjury from a witness. As an additional sanction, the circuit court awarded costs and attorney fees of $168,944.97 incurred by the defendants in prosecuting their motion to dismiss. We affirmed the circuit court's judgment as it pertained to Cynthia. *See Schultz v. Sykes*, 2001 WI App 255, 248 Wis. 2d 746, 638 N.W.2d 604.

¶ 3. Because Cynthia had no assets, the Journal Sentinel began wage garnishment proceedings against Cynthia's husband, John, to satisfy the judgment. In his answer to the garnishment notice, John responded that his wages were exempt from garnishment because the Journal's judgment was against Cynthia, not him, and that he and Cynthia had a marital property agreement classifying all of John's income as his individual property. After a hearing, the circuit court concluded that the judgment against Cynthia constituted a tort obligation under WIS. STAT. § 766.55(2)(cm) (1999–2000)[1] and that John and Cynthia's marital property agreement did not affect the Journal's right to use Cynthia's interest in the marital property to satisfy its judgment against Cynthia. Accordingly, the circuit court ordered that fifty percent of John's wages were subject to garnishment by the Journal. John appeals.

---

[1] WISCONSIN STAT. § 766.55(2)(cm) provides: "An obligation incurred by a spouse during marriage, resulting from a tort committed by the spouse during marriage, may be satisfied from the property of that spouse that is not marital property and from that spouse's interest in marital property."

All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

## II. Analysis

### A. Statutory Authority to Proceed Against John Schultz

¶ 4. The first issue we must decide is whether John's wages are properly subject to garnishment under the Wisconsin Statutes. Statutory interpretation is an issue of law that we review *de novo*. *State v. Szulczewski*, 216 Wis. 2d 495, 499, 574 N.W.2d 660 (1998). John argues that his wages cannot be garnished for Cynthia's misconduct because he was not a party to the original action. However, under WIS. STAT. § 766.55(2), marital property may be used to satisfy a spouse's obligation to a third party.[2] WISCONSIN STAT. § 803.045(3), in turn, provides that creditors are entitled, after obtaining a judgment against the debt incurring spouse, to proceed against the non-incurring spouse in order to reach any marital property that is available to satisfy the judgment. In other words, the Journal has the right to proceed against John in a garnishment action as long as John's wages are properly classified as marital property. *See Courtyard Condominium Ass'n, Inc. v. Draper*, 2001 WI App 115, ¶ 11, 244 Wis. 2d 153, 629 N.W.2d 38 ("Read together, WIS. STAT. §§ 766.55(2) and 803.045(3) permit the judgment creditor to proceed against all marital property to satisfy a judgment on an obligation incurred during marriage, even where only one spouse is the judgment debtor.")

¶ 5. With regard to the classification of John's wages, WIS. STAT. § 766.31(4) provides that, subject to a

---

[2] Depending on the type of obligation that was incurred, WIS. STAT. § 766.55(2)(a)-(d) provides that either *all* of the marital property or the *incurring spouse's interest* in the marital property may be used to satisfy an obligation.

few exceptions, "income earned or accrued by a spouse . . . during marriage and after the determination date[3] is marital property." WISCONSIN STAT. § 766.01(10) further defines "Income" as including "wages." However, WIS. STAT. § 766.31(10) permits spouses to re-classify their property through a marital property agreement. *See also* WIS. STAT. § 766.31(7)(d). John contends that because he and Cynthia had a marital property agreement that re-classified John's wages as individual property, his wages cannot be used to satisfy a judgment against Cynthia.

¶ 6. The Journal does not contest the validity of John and Cynthia's agreement.[4] However, the Journal asserts that the marital agreement is not binding in this situation because it had no notice of the agreement. Under WIS. STAT. § 766.55(4m), marital property agreements cannot limit the rights of a creditor "unless the creditor had actual knowledge of that provision when the obligation to that creditor was incurred."

---

[3] WISCONSIN STAT. § 766.01(5) provides:

"Determination date" means the last to occur of the following:

(a) Marriage.

(b) 12:01 a.m. on the date that both spouses are domiciled in this state.

(c) 12:01 a.m. on January 1, 1986.

There is no dispute that the John and Cynthia Schultz are married, or that they are domiciled in Wisconsin.

[4] A marital property agreement is invalid if it: was not signed by both spouses, WIS. STAT. § 766.58(1); is unconscionable, WIS. STAT. § 766.58(6)(a); was executed involuntarily, WIS. STAT. § 766.58(6)(b); or was executed without notice or financial disclosure to the other spouse, WIS. STAT. § 766.58(6)(c). In addition, a marital property agreement may not adversely affect the right of a child to support. WIS. STAT. § 766.58(2).

¶ 7. In response, John first argues that the Journal is not a creditor, so it was not entitled to notice. He refers us to Wis. Stat. § 766.01(2r)(a), which defines "creditor" as "a person that regularly extends credit" and *Matter of Geise*, 132 B.R. 908 (Bankr. E.D. Wis. 1991), which held that the Wisconsin Department of Revenue was not a creditor under § 766.01(2r) because it was not "a merchant who regularly extends credit." *Id.* at 913. John therefore concludes that the meaning of creditor does not include a "judgment creditor." The interpretation of "creditor" in *Geise*, however, did not occur within the context of Wis. Stat. § 766.55(4m), and Wis. Stat. § 766.01(2r)(c) provides specifically that the definition of "creditor" in paragraph (2r)(a) does not apply to § 766.55(4m). Further, the Legislative Council Notes for § 766.01 state that the term "creditor" as used in § 766.55(4m) is meant "in a broad sense." Therefore, Wis. Stat. § 766.01(2r) did not relieve John and Cynthia of the notice requirement. Further, if the Journal did not have actual notice of the agreement, then Wis. Stat. § 766.55(4m) requires that John's wages be treated as marital property for the purpose of determining what property is available to satisfy the judgment.

¶ 8. The next question is when "the obligation . . . was incurred" for the purpose of giving notice to the Journal under Wis. Stat. § 766.55(4m). John contends the relevant date is when judgment was entered in the underlying action, which was March 30, 2000. Because the Journal was first aware of the existence of a marital property agreement on February 15, 2000, John claims that the notice requirement was satisfied. In contrast, the Journal posits the date of Cynthia's misconduct as the one that controls, or, alternatively, when Cynthia's case was dismissed as a sanction for attempted subornation of perjury. The circuit court found that Cynthia

had attempted to suborn perjury from a witness most recently in September 1999, and Cynthia's defamation suit was dismissed on January 21, 2000. Because these dates both fall before John's asserted date when notice was given, the Journal argues that the requirement of § 766.55(4m) was not met.

¶ 9. We agree with the Journal that the relevant date is when the misconduct occurred. In the context of tort obligations, the Legislative Council Notes for WIS. STAT. § 766.55(2)(cm) state that, for a marital property agreement to have effect, the victim must have notice "at the time the tort occurs." Although the present situation is not identical to a tort, we believe the two are sufficiently similar so that the same point of time should be used to determine when the obligation incurred. Both situations involve involuntary creditors in which the traditional purpose of giving notice of a marital agreement to a creditor, so that it can make an informed choice regarding a decision to extend credit, does not apply. Similar to a victim of a tort, the Journal had no opportunity to decide whether it would "extend credit" to Cynthia when she attempted to suborn perjury. We therefore agree with the circuit court that John's wages are marital property for the purpose of satisfying Cynthia's debt to the Journal.

¶ 10. In deciding that only Cynthia's interest in John's wages, i.e. fifty percent, were subject to garnishment, the circuit court concluded that the applicable provision of WIS. STAT. § 766.55 was paragraph (2)(cm), which provides that an obligation incurred as the result of a tort may be satisfied only from the incurring spouse's interest in the marital property. Because none of the parties challenge this aspect of the circuit court's decision, we need not decide whether § 766.55(2)(cm)

was the correct provision to apply, or what amount of John's wages are subject to garnishment.

## B. Constitutional Issues

¶ 11. John asserts various constitutional arguments that we need only briefly address. He first contends that, if WIS. STAT. §§ 766.55(4m) and 803.045 authorize the Journal to proceed against him, they are unconstitutional. We give statutes a presumption of constitutionality and parties challenging a statute must show that it is unconstitutional beyond a reasonable doubt before we will strike it down. *State v. Hahn*, 2000 WI 118, ¶ 30, 238 Wis. 2d 889, 618 N.W.2d 528.

¶ 12. According to John, WIS. STAT. § 766.55(4m) violates due process "because it authorizes the punishment of innocent parties for crimes they did not commit." We disagree, however, that John is being "punished" at all, let alone for a "crime" that he did not commit. Rather, § 766.55(4m) is merely a notice requirement. When parties fail to give creditors notice of their marital property agreements, § 766.55(4m) provides that the default rules regarding ownership of property under the Marital Property Act will apply. Admittedly, satisfying the notice requirement with regard to involuntary creditors is no easy task. However, we do not believe this deprives John of due process of law. John has not cited authority giving him a constitutional right to shield marital property from creditors and he is not challenging WIS. STAT. § 766.31(3), which gives spouses an undivided one-half interest in all marital property. Therefore, his argument fails.

¶ 13. Next, relying on *Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337 (1969), and *Connecticut*

*v. Doehr*, 501 U.S. 1 (1991), John contends that both WIS. STAT. §§ 803.045(3) and 766.55(4m) are unconstitutional. In *Sniadach* and *Doehr*, the Supreme Court struck down two statutes that authorized the taking of property before the creditor obtained a judgment. *Sniadach*, 395 U.S. at 341–42; *Doehr*, 501 U.S. at 24. John asserts that WIS. STAT. §§ 803.045(3) and 766.55(4m) similarly circumvent the requirements of due process because they allow creditors to initiate a garnishment proceeding before obtaining a judgment against the non-incurring spouse. This argument has been made previously in other states and rejected. *Oyakawa v. Gillett*, 854 P.2d 1212, 1215 (Ariz. Ct. App. 1993); *Herbert v. Usner*, 593 So.2d 977, 979–80 (La. Ct. App. 1992); *Komm v. Department of Soc. & Health Serv.*, 597 P.2d 1372, 1375–76 (Wash. Ct. App. 1979). We agree with these courts that due process does not require a creditor to obtain a judgment against both spouses when marital property is being sought to satisfy an obligation. One spouse is sufficient to represent the marital community. Because John's individual property is not subject to garnishment, he has no due process claim.

¶ 14. John also cites to the Contracts Clause in Article I, § 10 and the Takings Clause in the Fifth Amendment of the United States Constitution, but never indicates how they might apply to this situation. We therefore decline to address those issues. *See State v. Scherreiks*, 153 Wis. 2d 510, 520, 451 N.W.2d 759 (Ct. App. 1989). In sum, John has not persuaded us that WIS. STAT. §§ 766.55(4m) and 803.045 are unconstitutional beyond a reasonable doubt.

¶ 15. In addition to challenging the constitutionality of the statutes, John also contends that the *Journal*

violated his due process rights when it garnished his wages. As John recognizes, due process can be violated only if there is "state action." *See DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). Citing *Lugar v. Edmonson Oil Co.*, 457 U.S. 922 (1982), John argues that the Journal may be treated as a state actor because it acted "under color of state law." However, acting pursuant to a statute does not, without more, make one a state actor for the purpose of the Fourteenth Amendment. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164–66 (1978). Moreover, if the statutes themselves are not unconstitutional, it is difficult to understand how the Journal, acting pursuant to those statutes, could be violating John's constitutional rights.

¶ 16. Finally, John challenges the underlying action on a number of grounds, including that the decision to award fees was a violation of his right to due process because it was made by a judge not a jury and that the amount of the award violated the Excessive Fines Clause of the Eighth Amendment. While we agree with John that "a garnishment derives its legitimacy from the suit it accompanies," it is in the context of that suit and not here that those claims should have been asserted. Cynthia did in fact raise many of the same arguments in the underlying suit, and we rejected them. Regardless, John's assertion of these issues here constitutes an impermissible collateral attack. *See Schramek v. Bohren*, 145 Wis. 2d 695, 713, 429 N.W.2d 501 (Ct. App. 1988) (holding that collateral attack is allowed only if party has shown underlying judgment was procured by fraud).

*By the Court.*—Order affirmed.