IN RE the MARRIAGE OF Lynn Danette CURDA-DERICKSON v. Richard DuWayne DERICKSON:

SOKAOGON GAMING ENTERPRISE CORPORATION, Appellant,

v.

Lynn Danette CURDA-DERICKSON and Richard Du-Wayne Derickson, Respondents.

Court of Appeals

*No. 02–0924. Submitted on briefs November 11, 2002.— Decided July 3, 2003.*

2003 WI App 167

(Also reported in 668 N.W.2d 736.)

454

On behalf of the appellant, the cause was submitted on the briefs of *Andrew S. Caulum* of *Caulum Law Office, S.C.*, and of counsel, *Michael J. Collins* of *Collins Law Office, S.C.*, of Madison.

■■■■■■■■

On behalf of the respondents, the cause was submitted on the brief of *J. Thomas McDermott* of *Steinhilber, Swanson, Mares, Marone & McDermott* of Oshkosh.

Before Dykman, Roggensack and Lundsten, JJ.

¶ 1. ROGGENSACK, J. The Sokaogon Gaming Enterprise Corporation appeals the circuit court's judgment concluding that a restitution order imposed as part of Richard Derickson's criminal conviction for embezzlement during his marriage to Lynn Curda-Derickson is not a marital debt. Because the restitution order was the result of conduct that constituted the tort of conversion, which tort was committed by only one spouse, we affirm the circuit court's conclusion that the restitution order is Richard's sole obligation pursuant to Wis. Stat. § 766.55(2)(cm) (2001–02).[1]

## BACKGROUND

¶ 2. Lynn Curda and Richard Derickson were married on February 20, 1988. In 1994, Richard was appointed the tribal planner for the Sokaogon Chippewa Community, a federally recognized American Indian nation. Between October 1995 and July 1997, Richard embezzled more than $370,000 from the Sokaogon Gaming Enterprise Corporation (Sokaogon), a tribally chartered and wholly-owned subsidiary of the Chippewa, by causing checks to be issued in payment of false billing invoices. In January 1998, Richard and Lynn were indicted in federal district court on five counts of conspiracy to commit theft, fraud, interstate transportation of stolen funds and money laundering.

---

[1] All further references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

¶ 3. In May 1998, Richard entered into a plea agreement. He pled guilty to one count of conspiracy to defraud an Indian gaming establishment, contrary to 18 U.S.C. §§ 371 and 1167(b), and one count of money laundering, contrary to 18 U.S.C. § 1956. Richard also agreed to make restitution to the Sokaogon in the amount of $370,796.34 and to forfeit any right, title and interest in real and personal property traceable to funds from the Sokaogon. In a letter dated May 21, 1998, Lynn also agreed to forfeit any right, title and interest in assets purchased with money from the Sokaogon, but excluding parcels of real property located: (1) at E3888 Valley Road, Iola, Wisconsin, (2) at E5777 East Hidde Road, Marion, Wisconsin and (3) in the Town of Mattesor.

¶ 4. On May 26, the district court accepted Richard's plea, and upon the government's motion, dismissed the indictment against Lynn. At the plea hearing, the government submitted a list of assets for forfeiture that were purchased with stolen funds, consisting mainly of farm machinery and cattle. On April 1, the district court entered judgment against Richard, sentenced him according to the plea agreement and issued a restitution order of $370,796.34 to be paid to the Sokaogon. Additionally, the court ordered the turnover of the assets in Lynn and Richard's possession at the farm located on East Hidde Road, for liquidation in partial restitution to the Sokaogon.

¶ 5. In November 2000, Lynn commenced a divorce action. The Sokaogon moved to intervene as a third party claiming an interest in the real and personal

marital property to be divided by the court.[2] Specifically, the Sokaogon requested that the court classify the criminal restitution order against Richard as a marital debt. The court granted the Sokaogon's motion to intervene and a bench trial was held on February 18, 2002.

¶ 6. At trial, Lynn testified that she works as an economic support worker for the Waupaca County Department of Health and Human Services. In June 2000, the East Hidde Road property was sold in foreclosure proceedings and Lynn moved to the Valley Road property. She further testified that she did not sell, give or take away any of the assets listed for liquidation and that some were still at the East Hidde Road property when she left.

¶ 7. Additionally, Lynn testified that in February 2001, Richard quitclaimed his interest in the Valley Road property to her, in anticipation of a property division between the parties. Richard and Lynn had purchased the property prior to their marriage and paid off the original mortgage on the property in 1990, before Richard started to work for the Sokaogon. The property is therefore not traceable to his theft. It is currently valued at approximately $10,000 with a $5000 mortgage. There are also several judgment liens against the property, including unpaid real estate taxes, $17,000 due to Jerry's Excavating and the lien created by United States government's restitution order. Prior to the divorce proceeding, Lynn and the United States stipulated that her interest in the Valley Road property, notwithstanding the quitclaim deed, continued to be

---

[2] The United States also intervened as a third party in the Derickson's divorce action but did not participate in the trial or this appeal.

subject to any legal effects the docketed lien and judgment against Richard may have under applicable law.

¶ 8. Based on Lynn and Richard's testimony, the circuit court granted the divorce and divided the parties' property according to the terms of a marital settlement agreement that the court found to be fair and equitable. Under the settlement agreement, Lynn received her 1995 Ford Aerostar valued at $2200, her retirement plan worth $1937, an annuity valued at $161.50, the Valley Road property subject to its liens and all personal property in her possession. Additionally, Richard was "solely responsible for all debts and obligations of the parties incurred prior to the commencement of this action." Finally, the court denied the Sokaogon's request to classify the restitution order as a martial debt, reasoning that the Sokaogon had failed to demonstrate that Lynn was involved in the embezzlement. Therefore, the court concluded that under Wisconsin's marital property statutes, the Sokaogon's claim was not valid. The Sokaogon appeals.[3]

## DISCUSSION

**Standard of Review.**

¶ 9. The resolution of this appeal requires us to determine whether a restitution order imposed by a

---

[3] On appeal, Lynn moved to strike from the Sokaogon's reply brief an article from The Philadelphia Daily News and a criminal complaint from *United States v. Fastow*. Because the material was included to provide background for an argument grounded in public policy that has no bearing on our analysis regarding whether the restitution order is a marital obligation under WIS. STAT. § 766.55, we deny Lynn's motion to strike that portion of the reply brief.

criminal judgment is a marital obligation under Wis. Stat. § 766.55. The construction of a statute and its application to undisputed facts present questions of law that we review without deference to the circuit court. *Truttschel v. Martin*, 208 Wis. 2d 361, 364–65, 560 N.W.2d 315, 317 (Ct. App. 1997).

## Restitution Order.

¶ 10. The Sokaogon argues that the circuit court erred by concluding that the restitution order imposed against Richard was not a marital debt subject to division. The Sokaogon starts with the presumption that all property acquired during the marriage that is not inherited or gifted is subject to division in the divorce proceedings. Wis. Stat. § 767.255. Additionally, the divorce court presumes that the division of the marital estate, comprised of assets and debts, is to be equally allocated between the parties. *Id.* The Sokaogon then characterizes the restitution order as a type of "negative property" and reasons that because "[s]tolen money is not a gift or an inheritance," the restitution order that requires repayment of stolen money that was acquired during marriage must be presumed to be part of the marital estate. The Sokaogon also contends that Lynn failed to rebut the presumption that all debts incurred during the marriage are marital debts and therefore, the restitution order is a marital debt and subject to division between the parties. In so doing, the Sokaogon attempts to assume the posture of a spouse appealing from a judgment of divorce, rather than a judgment creditor seeking recovery for an obligation incurred by a spouse during the marriage.[4]

---

[4] The procedural posture of this case is unusual because, in the Sokaogon's words, it "appeals only the trial court's finding

¶ 11. The underlying purpose of this appeal is plain: the Sokaogon wants to recover from Lynn the indebtedness created by the restitution order and seeks the court's ruling that the order is a "marital debt" under Wis. Stat. § 767.255, towards this end. It is true that Wis. Stat. ch. 767 sets out a framework for the division of assets and debts upon dissolution of marriage. *Kuhlman v. Kuhlman*, 146 Wis. 2d 588, 590, 432 N.W.2d 295, 296 (Ct. App. 1988). However, a creditor's satisfaction rights for an obligation incurred by a spouse during the marriage turns on the nature of the obligation under Wis. Stat. § 766.55 of the Wisconsin Marital Property Act. *See St. Mary's Hosp. Med. Ctr. v. Brody*, 186 Wis. 2d 100, 103, 519 N.W.2d 706, 708 (Ct. App. 1994). Stated in practical terms, the Sokaogon's right to reach Lynn's property to satisfy the restitution order is not determined by § 767.255; rather, it is driven solely by the classification into which the obligation falls under § 766.55. *Id.*; *Bank One v. Reynolds*, 176 Wis. 2d 218, 221, 500 N.W.2d 337, 338 (Ct. App. 1993). The Sokaogon's reliance on § 767.255 is therefore misplaced.

¶ 12. We begin our analysis with an examination of Wis. Stat. § 766.55 that establishes classifications of obligations, marital and individual, with which spouses

---

that the . . . restitution order is not a marital debt." Therefore, the case differs from a usual creditor's action against a spouse to *reach* his or her property to satisfy a debt, for example, a creditor's action to garnish a spouse's wages pursuant to Wis. Stat. § 803.045. However, because the Sokaogon "became a creditor as a direct result of the criminal acts of Richard," our analysis is driven by the rules regarding debtors' and creditors' rights and remedies. *See* Wis. Stat. § 766.55.

may be involved, and clarifies what property is available to satisfy obligations of differing classes. Section 766.55 provides in relevant part:

> **(1)** An obligation incurred by a spouse during marriage, including one attributable to an act or omission during marriage, is presumed to be incurred in the interest of the marriage or the family. . . .

> **(2)** After the determination date all of the following apply:

> (a) A spouse's obligation to satisfy a duty of support owed to the other spouse or to a child or the marriage may be satisfied only from all marital property and all other property of the obligated spouse.

> (b) An obligation incurred by a spouse in the interest of the marriage or the family may be satisfied only from all marital property and all other property of the incurring spouse.

> . . .

> (cm) An obligation incurred by a spouse during marriage, resulting from a tort committed by the spouse during marriage, may be satisfied from the property of that spouse that is not marital property and from the spouse's interest in marital property.

> (d) Any other obligation incurred by a spouse during marriage, including one attributable to an act or omission during marriage, may be satisfied only from property of that spouse that is not marital property and from that spouse's interest in marital property, in that order.

¶ 13. The Sokaogon argues that the stolen funds benefited the marital estate and the restitution order was therefore incurred as a marital debt. Although it casts the argument in ch. 767 "property division" lan-

guage, we understand it to argue that the restitution order was incurred "in the interest of the marriage or the family," under Wis. Stat. § 766.55(2)(b). An obligation under the "family purpose" category may be satisfied from *all* marital property and all other property of the incurring spouse. Additionally, in dissolution, the court may assign an obligation incurred in the interest of the family to the "nonincurring" spouse and "the obligation may be satisfied as if both spouses had incurred the obligation." Wis. Stat. § 766.55(2m). In practical terms, a subsec. (2)(b) classification of the debt may allow the Sokaogon to attach the nonincurring spouse's wages to satisfy the restitution order after dissolution of the marriage.

¶ 14. In contrast, Lynn argues that the restitution order is an obligation "resulting from a tort committed by the spouse during marriage," and therefore falls within the purview of Wis. Stat. § 766.55(2)(cm). She reasons that the conduct that gave rise to Richard's criminal conviction would constitute the civil tort of conversion and therefore, the restitution order resulted from a tort committed by Richard during the marriage. She contends that the circuit court properly rejected the Sokaogon's request to hold her responsible for the obligation after divorce. Because the statutory classification of the restitution order determines whether it is a marital or an individual obligation, the resolution of this appeal turns on whether the restitution order was an obligation incurred "in the interest of the marriage or the family," or whether it resulted "from a tort committed by the spouse during marriage." *See* §§ 766.55(2)(b) and (2)(cm).

¶ 15. Wisconsin Stat. § 766.55 contains no clear provision for obligations arising from an order for restitution, but we conclude it may be classified as are

464

other obligations incurred during marriage. Accordingly, we start with the statutory presumption that obligations incurred by a spouse during marriage are "incurred in the interest of the marriage or the family." Section 766.55(1). It is not disputed that Richard incurred the restitution order during his marriage to Lynn. However, the legislature carved out statutory exceptions to the presumption, denominated as individual obligations because they may be satisfied only from that spouse's individual property and from that spouse's interest in marital property. *See* § 766.55(2)(cm). The nonincurring spouse, in this case Lynn, may therefore overcome the "family purpose" presumption by proving that the incurred obligation falls within the statutory exception for torts. *See Schmidt v. Waukesha State Bank*, 204 Wis. 2d 426, 442–43, 555 N.W.2d 655, 661–62 (Ct. App. 1996). To determine whether Lynn satisfied this burden, we must first examine the scope of § 766.55(2)(cm).

¶ 16. WISCONSIN STAT. § 766.55(2)(cm) protects an innocent spouse from personal liability for torts committed by the other spouse during marriage. *Bothe v. American Family Ins. Co.*, 159 Wis. 2d 378, 382, 464 N.W.2d 109, 110 (Ct. App. 1990). We previously held that the statute is not ambiguous and plainly provides that satisfaction of a tort obligation may be made only from (1) property of the tortfeasor spouse that is not marital property, and (2) the tortfeasor spouse's interest in marital property. *Id.*; *see also Schultz v. Sykes*, 2001 WI App 260, 248 Wis. 2d 791, 638 N.W.2d 76, *review denied*, 2002 WI 23, 250 Wis. 2d 557, 643 N.W.2d 94 (Wis. Jan. 29, 2002), *cert. denied*, 536 U.S. 960 (June 28, 2002) (holding that during marriage, a judgment creditor may garnish the tortfeasor's interest in the innocent spouse's wages). The issue here is whether a restitution

order imposed by a *criminal* judgment is an obligation "resulting from a *tort* committed by the spouse" under § 766.55(2)(cm) (emphasis added).

¶ 17. The purpose of all statutory construction is to discern the intent of the legislature. *State v. Setagord*, 211 Wis. 2d 397, 406, 565 N.W.2d 506, 509 (1997). We give the language of an unambiguous statute its ordinary meaning. *Id.* Applying this test to Wis. Stat. § 766.55(2)(cm), we conclude that the underlying determination of whether an obligation resulted from a "tort" requires examination of the spouse's conduct that gave rise to the claim made. A tort is a wrongful act for which a civil remedy may be obtained. *See* Black's Law Dictionary 1496 (1994). We begin by noting that an individual's conduct may constitute a tort without a *civil* judgment so concluding. *See* Webster's New Collegiate Dictionary 1232 (1977) (defining "tort" as "a wrongful act for which a civil action *will* lie . . ." (emphasis added)). Additionally, the same act may be both a crime because it violates a state law and a civil tort against an individual. Prosser and Keeton on Torts § 2, at 8 (W. Page Keeton et al. eds., Lawyers ed. 1984). Furthermore, there is nothing in the language of the statute to suggest that its purpose is to protect innocent spouses from liability only for obligations incurred as a result of a civil tort action. Instead, the statute shields an innocent spouse from some of the consequences of the other spouse's wrongful conduct. Accordingly, we conclude that § 766.55(2)(cm) classifies obligations resulting from a spouse's wrongful act during the marriage as an obligation for which only the tortfeasor spouse is personally liable.

¶ 18. Applying WIS. STAT. § 766.55(2)(cm) to the facts here, we note first that whether a spouse committed the act for which a civil remedy may be obtained presents a question of fact that is not disputed on appeal. At trial, the circuit court found that Richard committed a "horrendous property crime that continued on over many, many years" by repeatedly taking money from the Sokaogon without their permission. That conduct, for civil purposes, constitutes the tort of conversion. *See Schara v. Thiede*, 58 Wis. 2d 489, 497, 206 N.W.2d 129, 133 (1973). Additionally, the court found that Lynn "had no active part in the taking of this money" and that the restitution order "is totally one hundred per cent incurred and the responsibility" of Richard. The Sokaogon does not contest the court's findings or Lynn's assertion that the restitution order resulted from a tort committed solely by Richard during the marriage. A proposition asserted by a respondent on appeal and not disputed by the appellant's reply is taken as admitted. *Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99, 101 (Ct. App. 1994). Accordingly, for the reasons stated above, we conclude that the circuit court properly classified the restitution order as Richard's individual obligation, according to the provisions of § 766.55(2)(cm).

¶ 19. To refute this conclusion, the Sokaogon argues, on policy grounds, that where a marital estate benefits from a tort committed by a spouse during the marriage, the subsequent restitution order should be a marital debt. The Sokaogon contends that "the State of Wisconsin [should not] shelter their marital estate from financial responsibility to the very members of the public they injured." The Sokaogon relies on *Cadwell v. Cadwell*, 126 Ariz. 460, 616 P.2d 920 (Ct. App. 1980) and

*Bell v. Bell*, 49 Cal. App. 4th 300, 56 Cal. Rptr. 2d 623 (Ct. App. 1996), for the proposition that if liability of the married person is based on an act preformed for the benefit of the community, it should be satisfied from the community estate. In short, the Sokaogon asks us to apply a "family purpose analysis" to obligations arising from a tort committed by a spouse. *See* WIS. STAT. § 766.55(2)(b). We decline to do so.

■

¶ 20. The original Wisconsin Marital Property Act contained no separate category for tort obligations. KEITH A. CHRISTIANSEN ET. AL., MARITAL PROPERTY LAW IN WISCONSIN § 6.5 (2nd ed. 1986). Torts were included in the general satisfaction scheme of WIS. STAT. § 766.55(2) that required an analysis of whether the tort was committed in the interest of the marriage or the family. *Id.* Section 766.55(2)(cm) was added by the 1985 Trailer Bill and by its terms, removes the necessity of a family purpose analysis for torts committed during the marriage. *Id.* Therefore, debts created by the torts of only one spouse are an exception from those debts incurred in the interest of the family. Accordingly, we decline the Sokaogon's invitation to "re-insert" a family purpose analysis into tort obligations, and we affirm the judgment of the circuit court.[5]

---

[5] We note that this decision does not preclude an action *in rem* by a creditor to realize on a lien on property that was part of the marital estate. For example, if the government should choose to foreclose on its lien for the restitution order that is an encumbrance on the Valley Road property, it could do so. However, Lynn would not be personally liable if the price obtained for the property was insufficient to satisfy the lien. Similarly, this decision does not address whether WIS. STAT. § 766.55(2)(cm) protects the property of an innocent spouse where a marital property division granting property to the

## CONCLUSION

¶ 21. Because the restitution order was the result of conduct that constituted the tort of conversion, which tort was committed by only one spouse, we affirm the circuit court's conclusion that the restitution order was Richard's sole obligation under WIS. STAT. § 766.55(2)(cm).

*By the Court.*—Judgment affirmed.

---

innocent spouse is entered prior to the resolution of a criminal or tort action against the other spouse and the property awarded to the innocent spouse was acquired in whole or in part with money obtained by the tortious act of the other spouse.