COURT OF APPEALS
DECISION
DATED AND FILED

February 2, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP363**

**STATE OF WISCONSIN**

Cir. Ct. No. **2020CV193**

**IN COURT OF APPEALS
DISTRICT IV**

---

THE SCHARINE GROUP, INC.,

    PLAINTIFF-APPELLANT,

  V.

TAMERA J. DREHMEL AND KELLY S. BORDE,

    DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Columbia County: ANDREW W. VOIGT, Judge. *Affirmed*.

Before Kloppenburg, Fitzpatrick, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The Scharine Group, Inc. ("Scharine") sued Tamera Drehmel and Kelly Borde seeking execution against the "cash equalization payments" ordered to be paid to Tamera and Kelly in their respective 2018 divorce judgments. In those judgments, Donald Borde was ordered to make a $275,000 cash equalization payment to Tamera, and James Borde was ordered to make a $275,000 cash equalization payment to Kelly.[1] Scharine alleged that the cash equalization payments, which "remain unpaid," constitute "marital property" and are, therefore, available to satisfy the debt that is owed to Scharine after it provided farm goods and services to the Borde brothers' agricultural business in 2017 while the parties were married.

¶2 Scharine moved for summary judgment, seeking a declaration that Scharine "may execute against" the cash equalization payments to Tamera and Kelly "in satisfaction of its claim" for the business debt. The circuit court denied Scharine's motion, awarded summary judgment to Tamera and Kelly, and dismissed Scharine's complaint.

¶3 On appeal, Scharine makes the same argument that it made in the circuit court: (1) the Borde brothers' business debt to Scharine was incurred "in the interest of their marriages to Tamera and Kelly;" (2) Tamera and Kelly each received the right to a $275,000 "cash equalization payment" in their respective divorce judgments in lieu of equity in the Borde brothers' farming business; and (3) pursuant to WIS. STAT. § 766.55(2)(b) (2019-20),[2] the payments are transfers

---

[1] Because several of the individuals share the same last name, for ease of reading we follow the lead of the parties and generally refer to the individuals by their first names and to Donald and James collectively as "the Borde brothers."

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

to Tamera and Kelly of marital property and, therefore, are available to Scharine to satisfy the Borde brothers' business debt.[3] We reject Scharine's argument that the payments constitute marital property and are, therefore, available to Scharine to satisfy the business debt. Accordingly, we affirm.

## BACKGROUND

¶4 The following facts are undisputed for purposes of summary judgment.

¶5 Scharine is a corporation that sells agricultural products and services. In 2017, Scharine sold farm products and provided farm services to the Borde brothers, who, at the time, were partners in a farm operation. The balance due to Scharine for those sales and services is $157,437.70, plus late charges from September 30, 2018.

¶6 When the debt to Scharine was incurred in 2017, Donald was married to Tamera and James was married to Kelly. In 2018, both couples divorced.

¶7 As each of the couples agreed in a Marital Settlement Agreement incorporated as part of each divorce judgment, Tamera and Kelly were each to receive $275,000 from her ex-husband as a "cash equalization payment" to "equalize the marital property division." Donald was to make Tamera's payment

---

[3] Scharine clarifies that, inasmuch as the cash equalization payments have not yet been made, it does not seek a money judgment against Tamera and Kelly, but only a judgment against their "claims" for the cash equalization payments. Scharine does not assert that this distinction matters to our analysis of the issue on appeal, which, as stated by Scharine, is whether the payments constitute marital property available to Scharine to satisfy the Borde brothers' business debt. Consistent with Scharine's statement of the issue, we refer in this opinion only to the cash equalization payments.

within 90 days of the final divorce hearing and Tamera was to have a lien against "any property awarded to the husband until the $275,000.00 payment is made to [Tamera] in full." James was to make Kelly's payment "within 5 calendar days" of having access to the proceeds from his lender after "refinancing or renewing" a loan.

¶8 Sometime after entry of the divorce judgments, the Borde brothers each commenced Chapter 12 bankruptcy proceedings in the United States Bankruptcy Court for the Western District of Wisconsin.[4] At the time that the Borde brothers commenced the bankruptcy proceedings, the Borde brothers had neither made the cash equalization payments to Tamera and Kelly as ordered in their respective divorce judgments nor paid Scharine the debt incurred by the Borde brothers' business. The two Chapter 12 proceedings were jointly administered and a joint Chapter 12 plan was confirmed on October 15, 2020.

¶9 In the Chapter 12 bankruptcy plan, Tamera's and Kelly's claims for the equalization payments and Scharine's claim for the business debt were all categorized as "general unsecured claims." The bankruptcy plan provided that the cash equalization payments owed to Tamera and Kelly "shall not be discharged in bankruptcy."[5] The bankruptcy plan provided that the debts owed to Scharine and the remaining unsecured creditors were to be discharged after 36 months.

---

[4] Bankruptcy Code Chapter 12, titled "Adjustment of Debts of a Family Farmer or Fisherman with Regular Annual Income," enables financially distressed family farmers and fishermen to propose and carry out a plan to repay all or part of their debts to creditors over three to five years. 11 U.S.C.A § 12, § 1222(b)-(c). All references to the United States Code are to the 2018 version.

[5] Debts incurred under a judgment of divorce are not dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a).

¶10 In the course of the bankruptcy proceedings, the bankruptcy court granted Scharine's motion to pursue its claims against Tamera and Kelly.[6] Scharine filed this action against Tamera and Kelly in September 2020. As of the filing of the complaint, the Borde brothers had not paid the debt owed Scharine or made either of the $275,000 cash equalization payments to Tamera and Kelly.

¶11 Scharine moved for summary judgment, requesting a declaration that it may execute against the cash equalization payments to Tamera and Kelly to satisfy the Borde brothers' business debt. After briefing and oral argument by the parties, the circuit court denied Scharine's motion, granted summary judgment to Tamera and Kelly, and dismissed Scharine's complaint.

¶12 Scharine appeals.

## DISCUSSION

¶13 We review the circuit court's grant of summary judgment de novo, using the same methodology as the circuit court. *R.W. Docks & Slips v. State*, 2001 WI 73, ¶12, 244 Wis. 2d 497, 628 N.W.2d 781. Summary judgment is proper if there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. *Id.*; WIS. STAT. § 802.08(2) (summary judgment to the moving party) and (6) (summary judgment to the non-moving party).

¶14 The resolution of this appeal requires that we determine whether, under WIS. STAT. § 766.55, the cash equalization payments ordered in Tamera's and Kelly's divorce judgments constitute marital property so as to be available to

---

[6] Scharine does not assert that this order from the bankruptcy court was a statement from that court regarding the validity of Scharine's claim in this lawsuit.

5

satisfy the debt to Scharine incurred by the Borde brothers' business during Tamera's and Kelly's marriages to the brothers. The application of a statute to undisputed facts presents a question of law that we review independently of the circuit court. *Curda-Derickson v. Derickson*, 2003 WI App. 167, ¶9, 266 Wis. 2d 453, 668 N.W.2d 736; *Brey v. State Farm Mut. Auto. Ins. Co.*, 2022 WI 7, ¶9, 400 Wis. 2d 417, 970 N.W.2d 1.

¶15     We first review the pertinent provisions in WIS. STAT. § 766.55. We then apply the provisions to the undisputed facts and explain our conclusion that the cash equalization payments do not constitute "[m]arital property assigned to" Tamera and Kelly and, therefore, are not available to satisfy the Borde brothers' business debt incurred during the brothers' marriages to Tamera and Kelly. *See* § 766.55(2m).

## I. WISCONSIN STAT. § 766.55

¶16     WISCONSIN STAT. § 766.55, titled "Obligations of spouses," "establishes classifications of obligations, marital and individual, with which spouses may be involved, and clarifies what property is available to satisfy obligations of differing classes." *Curda-Derickson*, 266 Wis. 2d 453, ¶12. Section 766.55 provides in relevant part:

> (1) An obligation incurred by a spouse during marriage,[7] including one attributable to an act or omission

---

[7] "During marriage" is defined as "a period in which both spouses are domiciled in this state that begins at the determination date and ends at dissolution or at the death of a spouse." WIS. STAT. § 766.01(8).

The "determination date" is defined as "the last to occur of the following: (a) Marriage. (b) 12:01 a.m. on the date that both spouses are domiciled in this state. (c) 12:01 a.m. on January 1, 1986." WIS. STAT. § 766.01(5)(a-c).

during marriage, is presumed to be incurred in the interest of the marriage or the family.

(2) After the determination date all of the following apply:

….

(b) An obligation incurred by a spouse in the interest of the marriage or the family may be satisfied only from all marital property and all other property of the incurring spouse .…

(2m) Unless the dissolution decree or any amendment to the decree so provides, no income of a nonincurring spouse is available for satisfaction of an obligation under sub. (2) (b) after entry of the decree. Marital property assigned to each spouse under that decree is available for satisfaction of such an obligation to the extent of the value of the marital property at the date of the decree. If a dissolution decree provides that the nonincurring spouse is responsible for satisfaction of the obligation, the obligation may be satisfied as if both spouses had incurred the obligation.

Sec. 766.55 (clarifying footnote included where relevant.)

¶17    As stated, WIS. STAT. § 766.55(1) mandates that an obligation that has been incurred during marriage is presumed to be incurred "in the interest of the marriage or the family." *St. Mary's Hosp. Med. Ctr. v. Brody*, 186 Wis. 2d 100, 110, 519 N.W.2d 706 (Ct. App. 1994); *see* § 766.55(1). This presumption "applies to the categories of obligations described in § 766.55(2)(b) through (d)." *St. Mary's*, 186 Wis. 2d at 111. "[T]he statutory category into which an obligation falls determines the right of a creditor to reach the property of a spouse." *Id.* at 108. Pertinent here, and as quoted above, "an obligation incurred by a spouse in the interest of the marriage or the family may be satisfied only from all marital property and all other property of the incurring spouse." Sec. 766.55(2)(b). Under § 766.55(2m), also quoted above, "the extent of the value of the marital property

7

at the date of the [divorce judgment]" "is available for satisfaction of [an obligation under § 766.55(2)(b)]." *Id.*

¶18    Under WIS. STAT. § 766.31(1), "All property of spouses is marital property except that which is classified," by statute or agreement, as the individual property of one of the spouses.  Sec. 766.31(1).  Under WIS. STAT. § 766.01(15), "Property" is "an interest, present or future, legal or equitable, vested or contingent, in real or personal property, including digital property, as defined in [WIS. STAT. §] 711.03(10)."   Under § 766.31(3), "Each spouse has a present undivided one-half interest in each item of marital property."  Sec. 766.31(3).

*A. Analysis*

¶19    It is undisputed that the Scharine debt incurred by the Borde brothers during their marriages to Tamera and Kelly is an obligation in the interest of those marriages within the meaning of WIS. STAT. § 766.55(1).  It is also undisputed that the divorce judgments did not make Tamera or Kelly responsible for the Borde brothers' obligation to Scharine.[8]  Thus, the question on appeal is whether the cash equalization payments ordered to be made by the Borde brothers to Tamera and Kelly in their divorce judgments constitute "marital property" available to satisfy that debt under § 766.55(2)(b).

¶20    Under WIS. STAT. § 766.55(2) and (2m), the cash equalization payments ordered in the divorce judgments are not marital property assigned to Tamera or Kelly.   The divorce judgments required that the cash equalization

---

[8] In addition, the divorce judgments provide that each of the Borde brothers shall hold their ex-spouses Tamera and Kelly, respectively, harmless on all the debts of the business.

payments be made at some future point: within 90 days for Tamera with a lien on property held by Donald until the payment was made, and upon refinancing or renewing a loan for Kelly. These payments are neither personal nor real property "assigned" to Tamera and Kelly. *See* § 776.55(2m) (providing that marital property "assigned to each spouse" is available to settle a debt incurred during marriage). Unlike the assets divided between the spouses in the divorce judgments, the cash equalization payments did not exist during their marriages. Instead, each divorce judgment created a new obligation for one ex-spouse to compensate the other ex-spouse. *See* WIS. STAT. §§ 767.34(1) (stipulations between parties to a divorce must be approved by the court) and 767.34(3) (a judgment of divorce is effective when granted by the court).

¶21 Scharine itself acknowledges that "the Borde brothers did not transfer business assets to their ex-spouses." The cash equalization payments were created by the divorce judgments as obligations that are extraneous to the marital property accumulated during the marriages. By their terms, the divorce judgments did not transfer marital property from the Borde brothers to Tamera and Kelly; rather, they required the payment of money from whatever sources the Borde brothers would choose to make available to satisfy the ordered payment obligations.

¶22 This conclusion is supported by the fact that each cash equalization payment is itemized in its own separate section apart from the list of marital

property being assigned in each divorce judgment.[9]  That each payment is separated out of the property division, with its own section describing the payment, reflects that these payments were not marital property that existed at any point before the divorce judgments were entered.  Accordingly, the payments were not "marital property assigned" in the divorce judgments.

¶23    Scharine argues that the cash equalization payments are transfers of marital property available to satisfy the Borde brothers' debt to Scharine because the payments "compensate" Tamera and Kelly for their equity in the Borde brothers' business assets.  Scharine reasons that "[i]f the Borde brothers had liquidated their businesses instead of agreeing to compensate their spouses for their share of the equity, the divorce court would presumably have divided the proceeds between the spouses. Those proceeds would not have passed free and clear of the claims of business creditors."  Scharine then asserts that "[t]he same is true of the monetary claims provided in lieu of equity in these divorce proceedings."  This argument fails for at least the following reasons.

¶24    First, Scharine's two-paragraph presentation of the argument is not supported by legal authority, and we could reject it on that basis alone.  *See Industrial Risk Insurers v. Am. Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318

---

[9] In the judgment for the divorce between Tamera and Donald, there is a section entitled "Equalization of Marital Property Division" which is separate from a section entitled "Property Division."  This equalization section describes the "payment of $275,000 [] required to equalize the marital property division."  The section entitled "Property Division" also lists the "Cash Equalization Payment from the husband to the wife in the amount of $275,000.00" as the last item of property awarded to Tamera.  The Cash Equalization Payment referenced in the property division section differs from the other property itemized in that section in that the other items of property all existed at the time of the divorce judgment.  Given the payment's listing in the separate cash equalization section, it is evident that its listing in the property division section does not indicate that the cash payment itself is marital property being awarded to Tamera.

Wis. 2d 148, 769 N.W.2d 82 ("Arguments unsupported by legal authority will not be considered, and we will not abandon our neutrality to develop arguments.") (internal citations omitted).

¶25   Second, this argument also lacks factual support.  It is undisputed that the Borde brothers' business assets were marital property.  However, as explained above, unlike those assets that existed during the marriages, the cash equalization payments did not exist during the marriages.  Once the marital property was divided in each divorce judgment, a new obligation was created upon the ex-spouse, to be satisfied from any source by the ex-spouse.  This new obligation did not "assign" marital property to Tamera and Kelly.  *See* WIS. STAT. § 766.55(2m).

¶26   Third, the record does not support the connections that Scharine attempts to draw between the Borde brothers' business assets and the cash equalization payments.  The divorce judgments provided that Tamera was to have a lien on James's property until he made the cash equalization payment, and that Kelly was to be paid after Donald refinanced a loan.  These conditions ensured performance and enforcement of the payment obligations.  They did not transform the payments into marital property derived either from a lien on James's property or refinancing of Donald's loan.

¶27   Fourth, while the cash equalization payments to Tamera and Kelly are payments received "in lieu of" marital property, the ordering of those payments did not, as argued by Scharine, "convert" Tamera's and Kelly's equity in the marital property before divorce "to a claim for future payment."  The divorce judgments provided that Tamera and Kelly would receive future cash payments from their ex-spouses instead of portions of marital property to which

11

they may have been entitled. Nothing about these judgments involved the assignment of marital property or transfer of marital property or rendered those future payments marital property.

¶28 Fifth, Scharine concedes that Tamera and Kelly "are not personally obligated to pay the debts incurred by the Borde brothers." That concession, which is correct, leads to the following, and necessary, conclusion about Scharine's argument if this court allows Scharine to capture a portion of either $275,000 obligation owed by each Borde brother to his ex-wife. That conclusion is that one of the following two alternatives must be true, and each shows why Scharine's argument fails.

¶29 One alternative is that, at the time Scharine obtains a portion of the money owed by a Borde brother to either Tamera or Kelly, that money will have already been transferred by a Borde brother, and that money will then be owned by either Tamera or Kelly. In such an event, and contrary to the undisputed assertion of Scharine that Tamera and Kelly are not personally liable to pay the debts incurred by their ex-husbands, Tamera or Kelly will, in fact, be personally liable for the debt owed to Scharine. That is true because, in this scenario, a Borde brother paid the amount to his ex-wife as required by the divorce judgment and satisfied his obligation to his ex-wife, but Tamera or Kelly will not retain that money as it will be captured from them by Scharine. As a result, in this scenario, Scharine will have made Kelly or Tamera personally liable for the debt.

¶30 In the alternative, at the time Scharine obtains a portion of the money owed by a Borde brother to either Tamera or Kelly, the funds will still be owned by a Borde brother. In that event, the money must be ordered by a court to be paid from an account owned by a Borde brother. However, the Borde brothers

are not parties to this action. Accordingly, this court does not have the authority to order amounts to be paid from an account owned by a Borde brother. Further, the bankruptcy court did not give Scharine permission to bring suit against either Borde brother.

¶31 Under either alternative, the account containing the cash equalization payment will have to be owned by either Tamera or Kelly or one of the Borde brothers. In either situation, as just noted, allowing Scharine to obtain a portion of the payment is untenable because Tamera and Kelly are not personally liable for this debt and the Borde brothers are not parties to this action.

¶32 These same reasons apply to Scharine's restatement of its argument in its reply brief, that the payments are "traceable" from marital property. As explained above, the payments neither began as marital property nor transformed marital property to which they could be traced. There can be no tracing forward because there is no starting point in marital property.[10]

¶33 In sum, Scharine fails to show that the cash equalization payments constitute marital property that is available to satisfy the Borde brothers' business debt under WIS. STAT. § 766.55.

---

[10] Scharine in its reply brief cites testimony at the divorce hearing to support its tracing argument. Not only does the argument come too late, but Scharine does not argue that resort to extrinsic evidence is necessary to resolve an ambiguity in the divorce judgment. We reject Scharine's argument for these additional reasons. *See Bilda v. County of Milwaukee*, 2006 WI App 57, ¶20 n.7, 292 Wis. 2d 212, 713 N.W.2d 661 ("It is a well-established rule that we do not consider arguments raised for the first time in a reply brief."); *see also Pulkkila v. Pulkkila*, 2020 WI 34, ¶24, 391 Wis. 2d 107, 941 N.W.2d 239 ("A divorce judgment that is clear on its face is not open to construction.") (quoting *Washington v. Washington*, 2000 WI 47, ¶17, 234 Wis. 2d 689, 611 N.W.2d 261).

**CONCLUSION**

¶34    For the reasons stated, we affirm the circuit court's order denying Scharine's summary judgment motion, entering summary judgment in favor of Tamera and Kelly, and dismissing the complaint.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.