## NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 19, 2016
Decided August 24, 2016

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA D. ROVNER, *Circuit Judge*

JOHN ROBERT BLAKEY, *District Judge*[*]

No. 15-1865

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Western District of |
| | Wisconsin. |
| *v.* | |
| | No. 13-CR-83 |
| JOHN E. HENRICKS, III, | |
| *Defendant-Appellant*. | Barbara B. Crabb, |
| | *Judge*. |

## O R D E R

John Henricks, III pleaded guilty to one count of mail fraud. The district court sentenced him to 121 months' imprisonment and ordered him to pay $1.3 million in restitution to his victims. After willfully failing to pay the restitution, the district court resentenced him under 18 U.S.C. § 3614 to 151 months' imprisonment. Henricks appeals his resentencing, but because the district court did not clearly err either in finding that

---

[*] Hon. John Robert Blakey, District Judge, Northern District of Illinois, sitting by designation.

Henricks's failure to pay restitution was willful or in resentencing Henricks while he was in custody, we affirm.

## I. Background

Henricks used his towing businesses, auto body shop, and recreational vehicle dealership to defraud insurance companies by filing numerous fraudulent claims. He was charged with three counts of mail fraud and one count of identity theft in connection with mail fraud. On August 14, 2013, he pleaded guilty to one count of mail fraud. The plea agreement required him to begin making restitution immediately. It also conditioned acceptance of responsibility on his restitution efforts, including efforts to liquidate his extensive assets. The revised presentence report calculated the intended loss to Henricks's victims at slightly over $1.3 million. It put Henricks's net worth at over $1.3 million and the amount of restitution owed at $1,306,608.72. Henricks did not contest these calculations.

Henricks did not begin paying restitution immediately as required by the plea agreement. Instead, his efforts were directed at hiding assets. He missed the deadline for providing a financial statement to the government. When he finally submitted a statement, it contained several discrepancies and omissions. He hid several expensive assets, such as snowmobiles, a trailer, and a motorboat. He sold assets and failed to disclose the proceeds. He set up a new auto body business in his wife's name and began using it and a shady tool dealer to launder encumbered tools from his old business. He lied to the bank to get a business loan for the new auto body shop. He tried to sell his home in Rhinelander, Wisconsin to his daughter below its market value. And, he ran up $82,000 in credit card debt with his wife in anticipation of a future bankruptcy petition. This all occurred before Henricks was first sentenced.

Thus, when Henricks was first sentenced on January 9, 2014, the court noted his efforts to avoid paying restitution and denied him the reduction for acceptance of responsibility. Henricks's guideline range was 121 to 151 months' imprisonment. The district court sentenced him to 121 months and ordered him to pay $1,306,608.72 in restitution. The district court directed him to liquidate nonexempt assets and to make a payment of $150,000 in 90 days and another payment of $350,000 by January 4, 2015, giving him nearly a year from his sentencing to make the second payment. The court allowed Henricks to remain on pretrial release until March 11, 2014, when he was to report to prison.

On January 22, 2014, Henricks's wife filed for divorce, purportedly because she could no longer put up with his financial irresponsibility. On February 12, 2014, the district court revoked Henricks's pretrial release and ordered him detained because he was caught lying to a credit union in an attempt to obtain a new loan. Henricks was sent to the Federal Prison Camp in Duluth, Minnesota. While in prison, Henricks communicated with his wife via telephone calls and emails. Those communications showed that Henricks participated with his wife in the disposition of their assets. They also show that the divorce proceedings—begun after defendant was originally sentenced—were a ruse to protect the couple's assets from collection. The proposed marital settlement agreement filed with the divorce court confirmed this. Henricks was allocated low-value assets, fictional assets, negative value assets, and assets that had already been turned over to creditors or sold. Combined, the assets allocated to Henricks were worth *minus* $93,000. Add to that the more than $1.6 million in marital debt allocated to Henricks, and he was left with a debt of more than $1.76 million, not counting the $1.3 million he owes in restitution. Henricks's wife, on the other hand, was allocated $167,000 in marital assets, including a $18,537 federal tax refund. (She had previously spent the couple's $8,000 state tax refund.) In addition, she was allocated the new home in Amherst Junction, Wisconsin and the new auto body business. The only debt she was allocated was that pertaining to the new home and auto body business, roughly $220,000.

What's more, the tool dealer through whom Henricks laundered his tools from his old business gave the new auto body business $13,110.52 worth of new tools and $1,000 per week for an unspecified number of weeks in exchange for only $1,490.10. This activity began four months before Henricks was first sentenced, but continued until August 2014, roughly eight months after he was sentenced. Henricks and his wife also received $1,200 per month from renting the couple's former home in Rhinelander. Henricks's wife admitted to spending this income so that none of the rent proceeds were used to pay restitution or even the mortgage on the property.[1]

Henricks's restitution payment of $150,000, which was due on April 9, 2014, became delinquent on May 9, 2014. It was in default 90 days later, on August 7, 2014. The government moved to resentence Henricks on November 7, 2014. By that time, Henricks had made only two restitution payments of $25 each. By the time the court

---

[1] Henricks asserts that it is a matter of common sense that when a party owns real property, the party must pay some costs to keep and maintain the property. Henricks, however, falls short of asserting that he or his wife actually paid any expenses to keep or maintain their Rhinelander property.

resentenced Henricks over five months later, he had paid only $1,456.84 in restitution. Despite Henricks's supposed destitution, Henricks's wife deposited $3,750 into his inmate commissary account prior to his resentencing.

On April 16, 2015, the district court resentenced Henricks under 18 U.S.C. § 3614. It found Henricks in default and resentenced him to 151 months, the top of his guideline range. The district court found that Henricks willfully disregarded his restitution obligation, and that he and his wife worked together to conceal or shelter assets and use funds for their own purposes that should have been paid to his victims. The district court specifically identified the sham divorce's inequitable division of assets, the failure to relinquish the rental proceeds and the state and federal tax refunds, the laundering of the auto body shop tools, and the concealment of an expensive piece of shop equipment that was disclosed for the first time at the resentencing hearing. In addition to the statutory purposes of sentencing, the district court found that the 151-month sentence would deter Henricks from continuing to obstruct the government's efforts to obtain restitution and deter others from engaging in similar obstruction of justice.

## II. Discussion

We review factual findings at sentencing for clear error. *United States v. Berry*, 583 F.3d 1032, 1034 (7th Cir. 2009). This includes a court's finding that a defendant willfully failed to pay restitution. *United States v. Johnson*, 595 F.3d 292, 295 (6th Cir. 2010). We reverse "only if after reviewing the entire record, we are left with the firm and definite conviction that a mistake has been made." *United States v. Marty*, 450 F.3d 687, 689 (7th Cir. 2006) (internal quotation marks omitted).

A district court may resentence a defendant who "knowingly fails to pay a delinquent fine or restitution." 18 U.S.C. § 3614(a). "[T]he court may resentence the defendant to any sentence which might originally have been imposed." *Id*. To resentence a defendant to a term of imprisonment, the court must first determine that

> (1) the defendant willfully refused to pay the delinquent fine or had failed to make sufficient bona fide efforts to pay the fine; or (2) in light of the nature of the offense and the characteristics of the person, alternatives to imprisonment are not adequate to serve the purposes of punishment and deterrence.

18 U.S.C. § 3614(b). Indigency, by itself, is an insufficient reason for resentencing a defendant to a term of imprisonment. 18 U.S.C. § 3614(c).

Henricks argues that the district court clearly erred in finding that he willfully failed to pay restitution immediately after sentencing and when he was incarcerated. Specifically, he argues that the district court clearly erred because either his assets have no real value or he has no control over the assets. For example, he claims he has no control over his federal tax refund because it is in his wife's lawyer's trust account. After a review of the entire record, however, we are not "left with the firm and definite conviction that a mistake has been made." *Marty*, 450 F.3d at 689 (internal quotation marks omitted). While many of Henricks's assets were encumbered, he still had assets of significant worth. More than twice as much was put into his inmate commissary account as was paid toward restitution. The bulk of what Henricks paid toward restitution, $986, he only paid in the week before resentencing. Henricks was not resentenced for failing to make his first $150,000 payment, but for doing his best not to pay it. Furthermore, the communications with his wife while in prison demonstrate that he still had some control over his assets even though he was incarcerated.

Henricks also argues that the district court clearly erred by basing its willfulness finding primarily on facts that occurred prior to the original sentencing, for which he was already denied a reduction for acceptance of responsibility. His argument is not accurate. The district court specifically mentioned the divorce proceedings, the withholding of the rental proceeds and the tax returns, the tool laundering, and the failure to disclose an expensive piece of shop equipment until the resentencing hearing. The divorce proceedings began after his original sentencing. Much of the tool laundering, which included weekly payments of $1,000, occurred after his original sentencing. Henricks's wife spent the state tax refund after he reported to prison, and the federal refund remained in his wife's possession at the time of the resentencing hearing. Although some of the rental proceeds were received shortly before Henricks was first sentenced, others were not. As for the expensive piece of shop equipment that Henricks failed to disclose before the resentencing hearing, it should be obvious that the district court did not factor it into the original sentence.

Lastly, Henricks argues that the district court erred by resentencing him under 18 U.S.C. § 3614 because he was already in custody. Henricks contends that § 3614 should be limited to cases where the defendant is on probation or supervised release because that is the statute's primary purpose. Henricks relies on *Bearden v. Georgia*, 461 U.S. 660 (1983), from which § 3614 was codified. *See United States v. Payan*, 992 F.2d 1387, 1397

(5th Cir. 1993). In *Bearden*, the defendant's probation was revoked because he could not pay his $500 fine and $250 restitution payment. He could not pay because he could not get a job, only having a ninth-grade education and not being able to read. *Bearden*, 461 U.S. at 662–63. *Bearden* held that it was a violation of the Fourteenth Amendment for the sentencing court to revoke the defendant's probation solely for his inability to pay the fine or restitution, without finding that he was responsible for the failure or that alternatives were inadequate to punish or deter. *Id*. at 672–74.

Henricks's argument is without merit. It does not follow that because *Bearden* dealt with the revocation of probation, 18 U.S.C. § 3614 is therefore limited to cases of probation and supervised release. Section 3614 may have been an effort to codify *Bearden*, but that does not mean that it is limited to the facts of *Bearden*. Nothing in the statute's language supports Henricks's argument. Moreover, *Bearden* is clearly distinguishable: There, the defendant was clearly indigent because he had neither income nor assets, while here that is not the case. *Bearden*, 461 U.S. at 663.

### III. Conclusion

The district court did not clearly err either in finding that Henricks's failure to pay restitution was willful or in resentencing Henricks while he was in custody. Accordingly, we **AFFIRM** the judgment and conviction order of the district court.