Manion, Circuit Judge.
John Henricks (Henricks) pleaded guilty to mail fraud and was sentenced to imprisonment and ordered to pay restitution. Henricks's wife, Catherine, (Ms. Henricks) entered an appearance as an interested person in Henricks's criminal case. The district court determined the parties' interests in various property so that Henricks's property could be directed toward restitution to his victims. Ms. Henricks appeals, arguing that the district court did not have jurisdiction to decide the parties' property interests in Henricks's criminal case, violated her due process rights by not allowing *620 her an opportunity to present her case, and improperly determined the parties' interests in particular property. In so far as the district court had jurisdiction to determine the parties' property interests in the criminal case and did not violate Ms. Henricks's due process rights, we affirm. However, because the district court relied upon post-judgment conduct instead of determining the parties' property interests as of the date of the judgment lien, we vacate the district court's property-interest determination and remand for further proceedings.
I. Background
John Henricks owned a towing business, an auto body shop (Custom Collision), and a recreational vehicle dealership. He used those businesses to defraud insurance companies by filing fraudulent claims. Henricks's wife, Catherine, worked at some of these companies sporadically and was an officer of two of them and a member of the other. Ms. Henricks also opened bank accounts, applied for credit cards, and signed loan documents on behalf of the companies.
On August 14, 2013, Henricks pleaded guilty to one count of mail fraud. Instead of immediately beginning to make restitution as required by his plea agreement, Henricks began to hide assets. Because of these activities, the district court denied Henricks a sentencing reduction for acceptance of responsibility. On January 9, 2014, he was sentenced to 121 months' imprisonment and ordered to pay $1,306,608.72 in restitution. The judgment was entered the next day.[1] Less than two weeks later, Ms. Henricks filed for divorce.
On May 2, 2014, a writ of execution was issued directing the U.S. Marshals Service to take possession of personal property at the couple's home and at AJ's Auto Body, a business that the couple set up in Ms. Henricks's name after Henricks was indicted. Four days later, Ms. Henricks filed a voluntary Chapter 7 bankruptcy petition. On May 7, the Marshals secured property associated with the Henrickses' businesses in accordance with the writ of execution.
On May 20, Ms. Henricks filed an appearance as an interested person in her husband's criminal case because she claimed an interest in various property that was potentially subject to Henricks's restitution order. Ms. Henricks also filed a notice of the bankruptcy automatic stay, a response to the clerk's notice of execution, and a motion for a stay of execution. A little over two weeks later, the district court ordered the parties to brief whether the bankruptcy stay halted the government's restitution collection efforts, whether the marital estate had been unjustly enriched by Henricks's criminal activities, and, if so, whether Ms. Henricks was entitled to a full half of the marital assets.
On November 20, 2014, the government filed a motion for a default finding for relief pursuant to 18 U.S.C. § 3613A and resentencing pursuant to 18 U.S.C. § 3614 on the grounds that Henricks willfully defaulted on his restitution payments. In its motion, the government requested that the district court order Henricks to pay restitution using various property, including the assets of AJ's Auto Body, Ms. Henricks's retirement account, and the Henrickses' 2013 federal income tax refund.
Ms. Henricks filed an objection to the government's motion for restitution default and resentencing, specifically objecting to the property the government sought to *621 apply to Henricks's restitution, and requested a hearing on the motion. On January 7, 2015, the district court granted Ms. Henricks's motion for a stay of the writ of execution stating that "it would be premature to decide the extent to which the government is entitled to seize Ms. Henricks's property" until the bankruptcy court lifted the automatic stay. United States v. Henricks , 2015 WL 106160, at *1 (W.D. Wis. Jan. 7, 2015). In that same order, the district court scheduled an evidentiary hearing on the government's restitution default and resentencing motion for April 16, 2015.
Also on January 7, Ms. Henricks received her discharge from the bankruptcy court. She then filed a complaint for an adversary proceeding in the bankruptcy court, alleging that the government violated the automatic stay by continuing to keep property it locked in buildings on AJ's Auto Body property on May 7, 2014.
On April 16, 2015, the district court held a hearing on the government's motion for default and resentencing. Because neither Ms. Henricks nor her attorney was present, the district court deferred resolving the government's property claims for restitution. The district court found Henricks defaulted on his restitution payments. It found that Henricks and Ms. Henricks worked together before and after Henricks's January 9, 2014 sentencing to hide or shelter assets from restitution. The court also found that the couple's divorce, the property settlement of which was entered on February 10, 2015, was a sham to divert assets from restitution. In making this finding, in addition to the divorce property settlement, the district court cited recorded prison phone calls and e-mails between the couple. To call the divorce property settlement lopsided would be an understatement:
Combined, the assets allocated to Henricks were worth minus $93,000. Add to that the more than $1.6 million in marital debt allocated to Henricks, and he was left with a debt of more than $1.76 million, not counting the $1.3 million he owes in restitution. Henricks's wife, on the other hand, was allocated $167,000 in marital assets, including a $18,537 federal tax refund. (She had previously spent the couple's $8,000 state tax refund.) In addition, she was allocated a new home in Amherst Junction, Wisconsin and the new auto body business[, AJ's Auto Body]. The only debt she was allocated was that pertaining to the new auto body business, roughly $220,000.
United States v. Henricks , 658 Fed.Appx. 813, 815 (7th Cir. 2016). In concluding that Henricks willfully failed to pay restitution, the district court also cited Henricks's failing to turn over to the government for restitution the income tax refunds and laundering of auto body shop tools through A.J.'s Auto Body.[2] The district court resentenced him to an additional thirty months' imprisonment resulting in a sentence of 151 months' imprisonment and $1,306,608.72 in restitution, which was unchanged from his initial sentencing.
Ten months later, on February 11, 2016, the bankruptcy court entered an order modifying the automatic stay so that the district court or a court of competent jurisdiction might make a determination about Ms. Henricks's property interest in the sequestered property.[3] Accordingly, on *622 March 30, 2016, the government filed a motion in Henricks's criminal case to determine Ms. Henricks's property interests and the amount of restitution that the government could recover from the assets at issue. Afterwards, Ms. Henricks filed a timely opposition brief and a motion for abatement, but never requested a hearing on either motion.
While the government's motion for property determination and Ms. Henricks's motion for abatement were still pending, the district court issued what is docketed as a "memorandum" on October 12, 2016, noting that it would assume that these motions were ready for decision unless it heard from either party before October 19, 2016. The government responded that the issues were fully briefed; Ms. Henricks did not file any response.
On January 9, 2017, three years to the day after Henricks was first sentenced, the district court ruled on Ms. Henricks's property rights. The district court concluded that it had jurisdiction to make its determination under the Mandatory Victim Restitution Act (MVRA) and the Fair Debt Collection Procedures Act (FDCPA), and applied Wisconsin law to determine the parties' interests. Ms. Henricks argued that the assets assigned to her as part of the divorce settlement were her property and not subject to Henricks's restitution order, and that her discharge in bankruptcy protected her property rights. In response, the district court found that the divorce was a sham and held that Ms. Henricks was not entitled to retain most of the disputed assets because she was not an "innocent spouse" under Wisconsin law. In so concluding, the district court cited Ms. Henricks's involvement with Henricks's various companies that served as the vehicles for his fraud as well as her degrees in accounting and management and her work in those fields. The district court also relied upon factual findings it made at the April 2015 resentencing hearing and discussed extensively the parties' conduct after Henricks's judgment was entered on January 10, 2014, particularly the parties' sham divorce. These factual findings served as the basis for the district court's determinations about the parties' ownership interests in Ms. Henricks's retirement account, AJ's Auto Body, and the couple's 2013 federal income tax refund.
Ms. Henricks established her retirement account through her employment with a pet care company, Foster & Smith, where she worked from 2001-2013. This account had over $100,000 in it, all of which came from Ms. Henricks's wages. The government argued that Ms. Henricks would not have been able to contribute as much as she did to her retirement account had it not been for her husband's fraud. The district court rejected this argument, noting that the government had not stated what the amount would be absent Henricks's fraud and concluded that the government was not entitled to any part of Ms. Henricks's retirement account. Regarding the couple's 2013 income tax refund, the district court held that the government was entitled to the part of the refund that exceeded the amount of wages attributable to Ms. Henricks's Foster & Smith earnings and ordered the parties to provide additional briefing on what those amounts were. Finally, the district court *623 held that the government was entitled to the funds from AJ's Auto Body because the couple used the divorce as a means to protect ill-gotten gains and the government showed that AJ's only existed because, as the district court found at Henricks's resentencing, Ms. Henricks allowed a shady tool dealer to take assets belonging to Custom Collision, in return for cash and new tools.
Both the government and Ms. Henricks filed motions for reconsideration. The government argued that because the divorce was a sham, the retirement account was a marital asset. As a result, Henricks had a half-interest in the account, thereby making it subject to his restitution order. The district court agreed and reversed its prior ruling about Ms. Henricks's retirement account. Specifically, the district court held that because the Henrickses' divorce was a sham, Wisconsin marital property law should be applied as if there was no divorce, thereby entitling the government to one-half interest in Ms. Henricks's retirement account because it is marital property.
In her motion for reconsideration, Ms. Henricks asserted that the district court lacked jurisdiction and had no authority to determine her property rights and that she had no opportunity to be heard regarding the legitimacy of the divorce. She also argued that the district court erred in holding that she had no property interest in AJ's Auto Body. In support of her motion, Ms. Henricks submitted for the first time various exhibits, including her own affidavit detailing her position on the events of the case and the property at issue, receipts, and loan and other documents. The district court denied Ms. Henricks's motion holding that it had jurisdiction to determine her property claims, that she failed to rebut extensive evidence that the divorce was a sham, and that she had no interest in A.J.'s Auto Body because it was created from Henricks's fraudulent conduct and funds.
Finally, regarding the 2013 federal tax refund, the parties submitted supplemental briefing on the refund amount and sources. The total refund was $18,537; $5,416.93 of the refund was withheld from Ms. Henricks's wages from Foster & Smith and Communication Logistics, Inc., and $12,120 was withheld from Henricks's wages from Custom Collision and AJ's Auto Body. The parties also claimed a $1,000 child tax credit. The district court held that Ms. Henricks was entitled to $5,917 as her portion of the 2013 federal tax refund and child tax credit, with the remainder to be applied to restitution. The district court also corrected the clerical error in its January 9, 2017 order that the refund was from the couple's federal and not state income tax refund.
Ms. Henricks now appeals. On appeal, Ms. Henricks contends that the district court did not have jurisdiction to determine her property rights in Henricks's criminal case, and those determinations should have been made in a separate civil case. Ms. Henricks also asserts that the district court violated her due process rights by not allowing her the opportunity to present her case in the criminal proceedings. Finally, Ms. Henricks argues that the district court erred in its application of Wisconsin law in determining the parties' property interests. We address each argument in turn.
II. Discussion
On appeal, we review a district court's factual determinations for clear error and questions of law de novo . See generally United States v. Stadfeld , 689 F.3d 705, 709 (7th Cir. 2012).
*624 Ms. Henricks argues that her property rights should not have been determined in Henricks's criminal case, but instead should have been decided in a separate civil action. We disagree. As we have previously held, "the government's initiation of civil garnishment proceedings within the criminal case was procedurally appropriate under the MVRA and the FDCPA, and there is no concern about the district court's jurisdiction." United States v. Kollintzas , 501 F.3d 796, 801 (7th Cir. 2007). Such proceedings are appropriate in the criminal case even in cases in which a spouse asserts a property interest. See id. at 800-01.
The district court determined Henricks's property rights so the government could collect on his restitution obligation to his fraud victims. Because the property was marital property, it necessarily implicated Ms. Henricks's property rights, and the district court was within its statutory authority to determine Henricks's ownership interests in the property so that it could be applied to his restitution. Moreover, Ms. Henricks submitted to the district court's jurisdiction by entering an appearance as an interested party, filing motions of her own and responding to the government's motions. See id. at 801-02 (holding that the court had jurisdiction to decide the wife's appeal of a criminal garnishment proceeding when the wife participated in the criminal proceeding as an interested person). While Ms. Henricks tries to make much of the fact that the FDCPA sets forth civil procedures, this argument ignores the fact that "[t]he FDCPA is a procedural vehicle ... for the enforcement" of a restitution order in a criminal case. Id. at 801. Therefore, the district court properly employed the FDCPA in Henricks's criminal case.
In addition to her jurisdictional challenge, Ms. Henricks asserts that the district court violated her due process rights because she never had an opportunity to present her position about her divorce or "to provide testimony about the genesis of A.J.'s [Auto Body]" in the criminal proceedings. (Appellant's Brief at 24.) The record belies Ms. Henricks's claim. Ms. Henricks actively participated in the case, filing motions, briefs, and responses to the government's motions after she entered an appearance in May 2014. And Ms. Henricks squandered her other opportunities to present her case. Despite requesting a hearing on the government's motion for default and resentencing, neither Ms. Henricks nor her attorney attended that hearing. Also, Ms. Henricks provided no response to the district court's October 12, 2016 memorandum, which essentially invited the parties to alert it to additional evidence or briefing on the government's motion to determine her property rights and on her motion for abatement. Further, Ms. Henricks only presented rebuttal evidence about AJ's Auto Body in her motion for reconsideration, rather than in her original brief, when that evidence was available before the district court issued its January 9, 2017 order. See generally Fed. R. Civ. P. 60(b) (requiring that evidence must be newly discovered to serve as a basis for relief from a judgment or an order). Ms. Henricks cannot cry foul when she failed to take advantage of ample opportunities to present her case. Finally, the record shows that not only did Ms. Henricks have an opportunity to participate in the criminal case, but the district court considered Ms. Henricks's arguments when ruling. Therefore, Ms. Henricks's contention that she never had an opportunity to participate in the criminal proceedings is without merit, and her due process rights were not violated.
Turning now to the district court's determination of the couple's ownership interests, "[a]n order for payment of restitution *625 becomes a lien on all property and rights to property of the defendant upon entry of judgment[.]" Kollintzas , 501 F.3d at 802 (citing 18 U.S.C. § 3613(c) ). In this case, the government's lien attached to Henricks's property and rights to property on January 10, 2014, the date of his criminal judgment.
Liens resulting from restitution judgments are treated like federal tax liens. Id. (citing 18 U.S.C. § 3613, 26 U.S.C. § 6321 ). To determine the property to which the lien will attach, ''[w]e look initially to state law to determine what rights the taxpayer [or in this case, the criminal defendant] has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's [or defendant's] state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation.'' Id. (first alteration in original) (quoting Drye v. United States , 528 U.S. 49, 58, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999) ). The FDCPA also allows the government to take action against property as allowed under the law of the state where the property is located. 28 U.S.C. § 3010(a). State law is used only to determine the parties' property rights, and federal law is applied to determine whether the property could be liquidated for restitution payments. See Kollintzas , 501 F.3d at 802.
Under Wisconsin marital property law, a spouse's interest in property is, in relevant part, a "present undivided one-half interest in each item of marital property." Wis. Stat. § 766.31(3). Any obligations incurred during the marriage are presumed to be incurred for the benefit of the family, and therefore can be satisfied by all of the marital property as well as property held by the obligated spouse. Wis. Stat. §§ 766.55(1), (2)(a)-(b). There is an exception to this general rule for "an obligation incurred by a spouse during marriage, resulting from a tort committed by that spouse during marriage." Wis. Stat. § 766.55(2)(cm). Such an obligation "may be satisfied from the property of that spouse that is not marital property and from that spouse's interest in marital property." Id. A "tort," as the word is used in the statute, may include a criminal act if the conduct constituting the criminal act would also constitute a tort. Curda-Derickson v. Derickson , 266 Wis.2d 453, 668 N.W.2d 736, 742 (Wis. Ct. App. 2003). Wisconsin courts have concluded that § 766.55(2)(cm) protects an "innocent spouse," i.e., one who did not take part in the tort, from personal liability for torts committed by the other spouse. Curda-Derickson , 668 N.W.2d at 742-43 (holding that a restitution order was not a marital debt where a spouse was an "innocent spouse" because she "had no active part" in taking money for which her husband was found guilty of conspiracy to defraud an Indian gaming establishment and money laundering); Bothe by Gross v. Am. Family Ins. Co. , 159 Wis.2d 378, 464 N.W.2d 109, 110 (Wis. Ct. App. 1990).
Ms. Henricks insists that the couple's divorce property settlement changed the couple's ownership interests and, thus, should have been considered by the district court when making its property rights determinations. This argument ignores the timeline of events in this case and the basic legal principles regarding the priority of judgments. The government's lien against Henricks's property and interests in property attached on January 10, 2014, the date of the judgment. See Kollintzas , 501 F.3d at 802 ("An order for payment of restitution becomes a lien on all property and rights to property of the defendant upon entry of judgment[.]" (emphasis added)). Ms. Henricks did not file for divorce until after Henricks was sentenced, and *626 the couple's marital property agreement was not entered until February 10, 2015, thereby making it secondary to the government's lien. See United States v. McDermott , 507 U.S. 447, 449, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993) (noting in a dispute about the priority of a federal tax lien that "[a]bsent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that ' "the first in time is the first in right." ' " (quoting United States v. City of New Britain , 347 U.S. 81, 85, 74 S.Ct. 367, 98 L.Ed. 520 (1954) )). Therefore, the proper inquiry regarding the parties' property rights in cases such as these is, "What were the parties' ownership interests on the date of the judgment?" State law is employed to ascertain who owned what property, and then federal law is employed to determine whether the lien, as of the date of the judgment, attaches to the relevant property and rights in property.
Unfortunately, in this case, no one, not the government, not Ms. Henricks, nor even the district court, stated what the temporal point was for determining the parties' ownership interests, much less that it was the date of the judgement. Perhaps the district court was responding to the parties' arguments that the couple's divorce impacted the property determination, but the district court erred by basing its decision on the divorce and other events that occurred after January 10, 2014. Whether the divorce was a sham was relevant to whether Henricks's defaulted on his restitution payments, but it is irrelevant to what the parties' ownership interests were on the date of the judgment.[4] Assuming they are supported by the record, we find no fault in the district court's reliance on factual findings it made at Henricks's April 2015 re-sentencing hearing in so far as those facts took place on or before January 10, 2014. But we cannot review the district court's legal conclusions because they are based on factual findings that include events that occurred after the restitution judgment was entered and the government's lien attached. Therefore, we vacate the district court's property determinations and remand for the district court to determine the parties' property interests as of January 10, 2014, and then determine what property is subject to the government's restitution order.
III. Conclusion
For the foregoing reasons, the judgment of the district court is AFFIRMED in part and VACATED in part, and the case is REMANDED for further proceedings.

The government perfected its lien against Henricks's property and rights to property by filing lien notices in Portage and Oneida counties in Wisconsin on February 7, 2014, and February 10, 2014, respectively.

In a previous appeal, we affirmed Henricks's judgment and conviction, holding that the "district court did not clearly err either in finding that Henricks's failure to pay restitution was willful or in resentencing Henricks while he was in custody." Henricks , 658 Fed.Appx. at 814.

Following the bankruptcy's court's order, Ms. Henricks filed a declaratory judgment action in Wisconsin state court seeking a determination of her property interests. The government removed the case to federal court and filed a motion to dismiss for lack of jurisdiction. Henricks v. United States , 16-cv-101-bbc (W.D. Wis. Feb. 23, 2016). The district court granted the government's motion on August 31, 2016. Ms. Henricks did not appeal the dismissal of that case, and, thus, we do not have jurisdiction over her argument that the district court erred in dismissing it.

Citing the Rooker - Feldman doctrine, Ms. Henricks also argues that the district court erred by ruling that her divorce was a ruse and improperly undermined her divorce by making determinations about property settled in the divorce. Because the district court improperly considered the divorce in making the property determination, we need not address this argument.