In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 21-2725

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STEVEN MILLER,

*Defendant,*

APPEAL OF: LILIYA KRASILNIKOVA,

*Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cr-00442-2 — **Elaine E. Bucklo**, *Judge.*

———————————

ARGUED APRIL 8, 2022 — DECIDED JULY 12, 2022

———————————

Before WOOD, HAMILTON, and JACKSON-AKIWUMI, *Circuit Judges.*

HAMILTON, *Circuit Judge.* This appeal presents an unusually tangled story about ownership of a family residence. The district court sorted out the mess as well as the record would allow. We affirm its decision finding that defendant Steven

Miller had a one-half ownership interest in the property and that it should be used to pay restitution for Miller's crime.

Miller and appellant Liliya Krasilnikova are married. In 2018, Miller pled guilty to one count of wire fraud. Part of his sentence included an order to pay approximately $1.1 million in restitution. Days after Miller received his sentence, Krasilnikova agreed to sell their family home to a third party. The United States then gave notice of a lien on the property, asserting that Miller had a one-half interest in the proceeds and that his share should be used to pay restitution. Krasilnikova argues that the government is entitled to nothing. She contends that she was the sole owner and that Miller had no interest in the property or the sale proceeds.

The title to the property was indeed only in Krasilnikova's name, and title is ordinarily king in determining ownership interests in property. As Judge Bucklo explained in careful detail, however, the evidence here shows that the property was the subject of not one but several highly irregular, indeed fraudulent, transactions preceding Miller's conviction and the eventual sale of the home. The fraudulent transactions included the very transfer of title that Krasilnikova relies upon to assert that she was the sole owner. Since the paper title is not reliable, the district court properly considered the additional evidence, and the court did not err by dividing the proceeds equally between Miller and Krasilnikova based on their shared exercise of control over their family home.

I.   *Factual and Procedural Background*

This appeal comes to us in the form of a civil garnishment order inside a criminal prosecution. See *United States v. Kollintzas*, 501 F.3d 796, 800 (7th Cir. 2007) ("[D]istrict courts

may entertain civil garnishment and other collection proceedings as postjudgment remedies within an underlying criminal case….").

After Miller pled guilty to one count of wire fraud, he was sentenced to a year and a day in prison and two years of supervised release. He was also ordered to pay approximately $1.1 million in restitution to two financial institutions and a government agency. Upon entry of judgment, the order for payment of restitution became a lien in favor of the government on all of Miller's property and rights to property. See 18 U.S.C. § 3613(c); *Kollintzas*, 501 F.3d at 802. Such a lien is perfected against purchasers and other third parties when the government files a notice of the lien with an appropriate public office, such as the county clerk or recorder. See § 3613(d); 26 U.S.C. § 6323(f). Important to note: "Liens to pay restitution debts are treated like tax liens … [and] are 'effective against every interest in property accorded a taxpayer by state law.'" *Kollintzas*, 501 F.3d at 802 (internal citations omitted), quoting *United States v. Denlinger*, 982 F.2d 233, 235 (7th Cir. 1992).

The government then tried to collect Miller's assets to use them for restitution. Days after her husband was sentenced, Krasilnikova entered into a contract to sell their family home ("the Crescent Avenue property") for $855,000. Shortly after that, the United States filed a lien on the property to enforce the restitution judgment and collect what it said was Miller's portion of the proceeds. Krasilnikova disputed that claim. She asserted that Miller—and thus the government in his stead— was not entitled to any of the proceeds because title to the Crescent Avenue property was only in her name. With the sale pending, the parties struck a bargain: the government would

lift the lien on the property to allow the sale to go forward, but the sale proceeds would sit in escrow while the parties resolved the dispute.

Next, Krasilnikova filed a motion in the district court in Miller's criminal case. She sought an order to release the escrowed funds to her. The government objected and asserted it was entitled to one-half of the sale proceeds. To resolve the dispute, the district court applied the framework of the Federal Debt Collection Procedures Act (FDCPA), 28 U.S.C. §§ 3001–3308. The FDCPA governs collection of, among others, debts for securing restitution in federal criminal cases. *United States v. Sheth*, 759 F.3d 711, 716 (7th Cir. 2014). When the government asserts a lien on property of a criminal defendant, a person with a competing interest in the property is entitled to participate in the court collection proceedings. *Kollintzas*, 501 F.3d at 801, 803. The so-called "interested person" then has the burden of establishing her ownership interest in the disputed property. *Id.* at 803.[1]

---

[1] Krasilnikova notes that the government failed to file a writ of garnishment or to serve her with a notice of garnishment proceedings under 28 U.S.C. § 3202(b). The procedural errors did not matter here. As the district court found, Krasilnikova had actual notice of the government's claim to the Crescent Avenue property, and she participated in the proceedings with an attorney and provided documents and testimony to support her claim. *United States v. Miller*, 558 F. Supp. 3d 655, 659 (N.D. Ill. 2021). While we remind the government to follow the necessary procedures under the FDCPA, the procedural errors here did not cause Krasilnikova any prejudice. E.g., *United States v. Meux,* 597 F.3d 835, 838 (7th Cir. 2010) (no prejudice to defendant after government filed a motion for turnover instead of a motion for garnishment; defendant had "essentially the same due process protections" that he would have had in garnishment proceedings, including notice, representation, and a hearing).

As an "interested person," Krasilnikova asserted a competing right to the Crescent Avenue property over which the government had asserted an apparently valid lien. To resolve ownership disputes under the FDCPA, courts "look initially to state law to determine what rights the [criminal defendant] has in the property the Government seeks to reach," and then turn to "federal law to determine whether the [defendant's] state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Kollintzas*, 501 F.3d at 802, quoting *Drye v. United States*, 528 U.S. 49, 58 (1999). The latter is not in dispute, so the state law issue is decisive.

After holding an evidentiary hearing, the district court concluded that the government was entitled to one-half of the proceeds from the Crescent Avenue property sale. The court first determined that under Illinois law, courts evaluating ownership can look past title and instead ask who actually exercised control over the property at issue. *United States v. Miller*, 558 F. Supp. 3d 655, 661–62 (N.D. Ill. 2021), citing *People v. Chicago Title & Trust Co.*, 389 N.E.2d 540, 544–45 (Ill. 1979). Krasilnikova's sole title was not decisive but rather a factor to be considered. The district court gave little weight to the title because it reflected "a number of serious irregularities." *Id.* at 663.

The court ultimately found that Miller and Krasilnikova exercised shared control over the property so that each was entitled to half of the proceeds. To reach an even split, the court took guidance from Illinois divorce law. Illinois courts split marital property "in just proportions." *Id.*, quoting 750 ILCS 5/503(d). The court concluded that a fifty-fifty split satisfied that standard here, and at least that Krasilnikova did

not prove she was entitled to more, as was her burden under the FDCPA. The court therefore awarded the government Miller's half of the sale proceeds. Krasilnikova has appealed.

II. *Analysis*

We review the district court's factual findings for clear error and conclusions of law de novo. *United States v. Henricks*, 886 F.3d 618, 623 (7th Cir. 2018). Krasilnikova's central argument on appeal is that the district court misapplied state law by finding that Miller had an interest in the Crescent Avenue property despite her sole title. We disagree.

A series of property transfers and mortgages casts significant doubt on the legitimacy of Krasilnikova's paper title. Ample evidence suggests that Miller and Krasilnikova manipulated property and financial records to conceal the true ownership of the Crescent Avenue property. In such circumstances, Illinois law authorizes courts to evaluate ownership in light of evidence of genuine control over the property. The evidence showed that Miller and Krasilnikova exercised equal control over the property and thus had equal property interests at the time of sale. At the very least, the district court did not clearly err in finding that they did. We turn now to evidence of the history of the Crescent Avenue property, and then apply Illinois law to this ownership dispute.[2]

---

[2] Krasilnikova makes an additional argument related to the proper framework for resolving her appeal. She asserts that the parties' escrow agreement, not the FDCPA, governs this dispute. It does not. The government's potential interest in the Crescent Avenue property stems from Miller's restitution order, not the escrow agreement. While the escrow agreement offered a practical solution to a time-sensitive problem, the parties did not contract around the FDCPA, which "provides the exclusive civil procedures for the United States … to recover a judgment on a debt" in

A. *The Crescent Avenue Property*

In 2012, Krasilnikova purchased the Crescent Avenue property with a $250,000 gift she received from her parents. Miller handled the closing by himself at Krasilnikova's direction. At the time, Miller and Krasilnikova were engaged. Krasilnikova did not obtain title to the property immediately. Instead, county property records indicate that the title passed to a land trust. The beneficiaries of the trust were Krasilnikova and Ellen Malecki, a person who would play a big role in later transactions, and they were listed as joint tenants.

In December 2012, Miller and Krasilnikova were married. They razed the old house on the Crescent Avenue property and built a new one. The improvements cost around $425,000. To help finance the building, SRK Ventures LLC issued a mortgage loan for $200,000 to the trust, with the loan to be paid off in four months. The loan agreement bore Krasilnikova's and Ellen Malecki's signatures, but Malecki testified that her signature was forged. Miller himself guaranteed the construction loan. A law firm disbursed the funds from the trust to the subcontractors with Krasilnikova's and Ellen Malecki's signatures, but Malecki testified that her signature was again forged.[3]

---

most cases. *Sheth*, 759 F.3d at 716 (omission in original), quoting 28 U.S.C. § 3001(a). And no other federal law, such as the Mandatory Victims Restitution Act, applies in this case. See § 3001(b) (other collection procedures may apply if "another Federal law specifies procedures for recovering on a claim or a judgment for a debt arising under such law").

[3] The loan was not paid off within the four months, so SRK filed a lien on the property. Then in October 2013, a friend of Krasilnikova's paid off the balance of the SRK loan, which at that time was $250,000. SRK then released the lien. Krasilnikova reimbursed the friend with part of the

Miller and Krasilnikova moved into the Crescent Avenue property in 2013. The two would go on to live together and raise two children there until they sold the property in 2019, three months after Miller's sentencing. During those years of the couple's residence, however, the paper trail of titles, deeds, and mortgages was a byzantine tangle.

In November 2013, Krasilnikova transferred to Ellen Malecki and Malecki's husband her interests in the land trust that held title to the Crescent Avenue property. Krasilnikova acknowledged that her action "took myself off the title." Ellen Malecki testified that the only Malecki signature on the document approving the transfer was forged. A week later, the trust deeded the Crescent Avenue property to the Maleckis in their own names. Ellen Malecki testified that, once again, she and her husband did not know about the deed. The Maleckis' names would remain on the title of the Crescent Avenue property for the next two years, all while Miller and Krasilnikova lived in the home.

Then came a series of additional mortgages and title transfers. First, in December 2013, a mortgage loan application was submitted to Carrington Mortgage Services, LLC in the names of the Maleckis. Miller witnessed and notarized the loan application. Carrington loaned the Maleckis $417,000. In what is becoming a familiar story, Ellen Malecki testified that she did not know about the Carrington mortgage, that her and her husband's signatures were forged, and that she never received the proceeds.

---

proceeds from a later mortgage. According to the evidence in the district court, these transactions involving Krasilnikova's friend were not documented.

Krasilnikova admitted in her testimony that the Carring-ton loan was actually for her and Miller's use. She also testi-fied that the Maleckis' family history and financial infor-mation, instead of her own, were submitted to qualify for the mortgage. (We use the passive voice advisedly because Krasilnikova's testimony about how this fraudulent transac-tion was accomplished was so vague. See Dkt. 188, at 20–25.) As the district court noted, Krasilnikova testified that she was under the impression, from Miller, that Ellen Malecki had agreed to "help me out" because Krasilnikova's credit score was not high enough to obtain a loan in her name. Cf. 18 U.S.C. § 1344 (criminal bank fraud). The district court also found, on a point important to the bottom-line finding of shared ownership, that Miller and Krasilnikova made monthly payments on the loan from a joint checking account, and that Miller and Krasilnikova paid property taxes from the same joint checking account until late 2015.

Property records indicate that the Maleckis quit-claimed the property to Myers Building & Consulting in September 2015. Once again, Ellen Malecki testified that her and her husband's signatures were forged and that she did not know about the transaction. It was Miller who notarized their supposed signatures on the quit-claim deed. A week later, Myers Building & Consulting quit-claimed the title to Krasilnikova in her own name. Once again, Miller notarized the transaction. On this transaction, Krasilnikova testified, her own signature on the document was forged. Still, this is the deed that Krasilnikova relies on to claim sole ownership.

In October 2015, two more mortgages were taken out on the Crescent Avenue property. The first was from First Gen-eration Capital LLC, which issued a loan for $310,000 secured

by a mortgage on the property. The mortgage listed the Maleckis as the mortgagors and OV18 LLC, one of Miller's companies, as the borrower. This time, Ellen Malecki testified, she and her husband had actually signed the document. But she added that she signed the document at Miller's request without knowing what the document was for and that she did not receive any proceeds from the loan. As for Krasilnikova, she testified that she did not know about this mortgage or loan. Even though the loan was secured by a mortgage granted by the Maleckis, who were no longer even nominally on the title, the First Generation Capital loan was released on January 31, 2016. The record does not reflect who, if anyone, paid off the loan.

The second October 2015 mortgage came from FirstMerit Bank. It issued a loan to Krasilnikova for $500,000 secured by a mortgage on the Crescent Avenue property. Krasilnikova testified that she used the proceeds from the FirstMerit loan to pay off the earlier Carrington loan. Krasilnikova now asserts on appeal that she made monthly payments on the First-Merit loan, but she provided no documentary evidence for support in the district court.

Then in May 2019, days after Miller was sentenced for wire fraud, Krasilnikova entered into a contract to sell the Crescent Avenue property to a third party for $855,000. Some of the proceeds were then used to pay off the FirstMerit loan. Under the parties' agreement, the net proceeds were placed in escrow pending the court's resolution of the dispute. The court later granted a joint request from the parties to release half of the net proceeds to Krasilnikova while it determined whether the government had an interest in the rest.

B. *The Legal Consequences for Ownership*

As noted above, we consult state law to determine the parties' property rights for purposes of the FDCPA. *Henricks*, 886 F.3d at 625. The parties agree that when Krasilnikova sold the Crescent Avenue property shortly after Miller's sentencing, she conveyed a facially unencumbered title and that title was in only her name. That title generally reflects legal ownership is axiomatic. See, e.g., *Denlinger*, 982 F.2d at 235 (explaining that "the rule everywhere in America" is that record title is the "highest evidence of ownership" (internal citation omitted)).

A good illustration of the point is *First Federal Savings & Loan Ass'n of Chicago v. Pogue*, 389 N.E.2d 652 (Ill. App. 1979). In that case, a bank filed a judgment lien on the property of a land trust against the beneficiary of that trust. Under Illinois law, a "beneficial interest in an Illinois land trust is an interest in personal property and not a direct interest in the real estate res of the trust." *Id.* at 655. The court found that since the record title of the property was in the trustee's name, the beneficiary did not have any "actual ownership or record title to property … upon which a lien could be impressed." *Id.*; accord, *Wagemann Oil Co. v. Marathon Oil Co.*, 714 N.E.2d 107, 115 (Ill. App. 1999) ("To hold otherwise would be inconsistent with the body of law holding that an interest in a beneficial interest does not attach to the real estate."). This general principle would point toward a conclusion that the government is not entitled to any of the sale proceeds because Miller's name was not listed on the title.

But the problem for Krasilnikova is that the larger record shows that her claim to sole title is completely unreliable. As the district court found, Miller and Krasilnikova engaged in a

complex series of irregular and fraudulent transactions to conceal true ownership of the Crescent Avenue property. To rely on bare title here would ignore the actual circumstances of those transactions. As we read Illinois law, in a rare case like this one, where substantial evidence shows that the paper title cannot be trusted, Illinois courts will consider other factors to determine true ownership of the property in dispute.

We draw this understanding from cases in which Illinois courts have recognized certain exceptions to the general rule that title is king. For instance, in assessing real estate taxes, the Illinois Supreme Court held that beneficiaries of a land trust, though not in legal title, were the owners of the property and therefore were liable for the tax. *Chicago Title*, 389 N.E.2d at 544 ("Revenue collection is not concerned with the 'refinements of title'; it is concerned with the realities of ownership."). In *Chicago Title*, the court explained that its prior opinions "indicate[d] a clear policy of the tax statute to look beyond the mere holder of title for a determination of ownership." *Id.* at 545. Courts do not ignore title in land taxation disputes. Rather: "While title may be a factor in determining ownership it is not decisive. Of far greater importance is control of the property and the right to its benefits." *Id.* The idea that title does not always control ownership disputes extends beyond taxes to other areas in Illinois law as well. See, e.g., *IMM Acceptance Corp. v. First National Bank & Trust Co. of Evanston*, 499 N.E.2d 1012, 1015 (Ill. App. 1986) (statute of frauds); *Department of Conservation v. Franzen*, 356 N.E.2d 1245, 1250–51 (Ill. App. 1976) (eminent domain proceedings).

These cases indicate that in rare cases where substantial evidence casts paper title into doubt, Illinois courts are willing

to look beyond paper title and to take practical approaches to resolving ownership questions. Cf. *Chicago Title*, 389 N.E.2d at 544 ("where the primary issue involves ownership rather than title, reliance on bare legal title would be inappropriate" (internal citation omitted)). That practical approach is especially suited to cases like this one, where the paper title does not reliably reflect reality.

A hypothetical example borrowing facts from this appeal illustrates the need for this flexibility in rare cases. Vary the facts here and assume Miller had been sentenced in 2014, when the title of the Crescent Avenue property was in the Maleckis' names. At that time, Miller and Krasilnikova had built a new home on the property and were living there, paying property taxes, and making payments from their joint checking account on the Carrington mortgage that they had taken out in the names of the Maleckis. Suppose the government had *then* asserted a lien on the Crescent Avenue property to secure restitution. A court would not have held the lien invalid, letting Miller off the hook, just because the Maleckis' names—not his—were on the title, especially without the Maleckis' knowledge. We would not conclude that Miller had no ownership interest when he lived in and helped improve the property, made payments for mortgages and property taxes, and orchestrated irregular and fraudulent transactions so that property records would not show his ownership interest. In that rare situation, Illinois law would permit courts to look beyond title. The same is true here.

We are not saying that a married couple cannot choose to arrange their affairs so that they maintain separate ownership of properties, including a family residence. The problem here is that the paper title in only Krasilnikova's name is

unreliable, as it stems from the series of fraudulent transactions and forged signatures described above.

Accordingly, the district court did not err in consulting other facts indicating actual control and deciding to split the proceeds equally between Miller and Krasilnikova. Neither spouse exercised more control than the other. The property was the family home for both. While Krasilnikova took out some of the mortgage loans in her name, Miller facilitated the closing and/or personally guaranteed some of those transactions, sometimes even entering into mortgages and transactions in Krasilnikova's name, supposedly without her knowledge. Payments for at least one of those mortgages, as well as property taxes, came from a joint checking account where they both deposited their paychecks.

The district court considered these facts and found that neither spouse exercised more control than the other. That finding was not clearly erroneous, and the court reasonably concluded that Miller and Krasilnikova each had a one-half ownership interest in the sale proceeds. The government is therefore entitled to Miller's one-half interest of the Crescent Avenue property sale proceeds under the restitution order. The judgment of the district court is

AFFIRMED.