*In re* MARRIAGE OF LORRIE JANE MARX, Petitioner-Appellee, and MARTIN WILLIAM MARX, Respondent-Appellant.

Fourth District   No. 4—95—0814

Argued May 15, 1996.—Opinion filed June 28, 1996.

Mark T. Petty (argued), of Arcola, for appellant.

Kathleen A. Finney (argued), of Rantoul, for appellee.

PRESIDING JUSTICE COOK delivered the opinion of the court:

Respondent Martin Marx appeals the supplemental dissolution judgment, arguing the trial court erred where it (1) made no findings of fact in ruling on the property issues, and (2) abused its discretion in the distribution by failing to consider whether his nonmarital estate should be reimbursed for the $20,000 used as a down payment on the parties' house. In reply to Martin's arguments, Lorrie makes a release-of-errors argument concerning Martin's alleged acceptance of the benefits of the decree and his subsequent attack on the unfavorable parts of the decree. We affirm.

## I. BACKGROUND

Lorrie Gifford and Martin Marx were married in December 1984. They have two children. The parties separated in April 1992. The marriage was dissolved in February 1993. A "SUPPLEMENTAL JUDGMENT OF DISSOLUTION OF MARRIAGE (ANCILLARY MATTERS)" was entered in September 1995.

Lorrie is a nurse. At the time of dissolution, she was earning over $35,000 annually. Martin is a high school teacher. At the time of dissolution he was earning approximately $27,000 annually.

Before the marriage, in July 1984, the parties bought a house. The purchase price was $49,500. The parties obtained a mortgage from a bank in the amount of $24,000. In addition, Martin received $20,000 from his father, which was applied to the purchase. Currently the house is valued at $49,000.

Other property subject to this appeal includes a large collection of "Precious Moments" statues (some of which belonged to Lorrie prior to marriage), pension accounts, two cars, Lorrie's craft business and its supplies, household furniture, and the parties' federal income tax refund.

When the parties separated, Lorrie testified she had to move from the house. Martin, however, remained there and continued to have the sole use of the parties' personal property. Lorrie first stayed with friends, then rented a house. She had to expend funds on furnishing it, and, because she apparently had no access to her former residence, had to buy appliances, children's toys, and even replacement clothing.

On August 8, 1994, both parties filed written closing arguments. The trial judge resolved the issues as Lorrie's argument suggested, and this appeal followed.

## II. ANALYSIS

### A. Release of Errors

We consider as a threshold matter Lorrie's argument that Martin

ought be estopped from pursuing this appeal under the doctrine of release of errors. She maintains Martin's purchase of the marital residence subsequent to and pursuant to the terms of the dissolution judgment amounts to his enjoyment of the benefits of the judgment and she has been disadvantaged. We disagree.

■ First, the record before us fails to demonstrate the events upon which Lorrie's release-of-errors argument is premised. Second, the rule is as follows: as a general rule, a litigant cannot attack a decree whose benefits he has previously enjoyed, if to do so would place the opposing party at a distinct disadvantage upon reversal of the decision (*Lemon v. Lemon*, 14 Ill. 2d 15, 17, 150 N.E.2d 608, 610 (1958)). We fail to see how this rule is applicable here. Assuming Martin purchased the house within 14 days of the judgment, both parties presumably benefitted from not having to list it with a realtor (as the decree provided) and pay a sales commission. The only other apparent benefit to Martin would be he did not have to move. No disadvantage to Lorrie is shown: she received her share of the proceeds and had the immediate use of the money.

### B. The Court's Findings of Fact

■ Martin first argues the trial court made no findings of fact with respect to the parties' property. In support of his argument, Martin points to the court's "cryptic" docket entry "Remaining issues ordered as set forth in Petitioner's Closing Argument filed August 8, 1994." The next sentence, however, stated: "Written order to be presented approved by counsel." Martin further ignores the court's written dissolution judgment.

In the supplemental judgment, the court effected "equitable distribution" of, and ruled on, some 17 items, including the "marital residence," "Precious Moments statuary," 1989 car, 1984 car, the parties' pension accounts, federal income tax refund, coin collection of the parties' children, craft supplies, nonmarital debt to Martin's father, the "remaining consumer debts," and the parties' medical insurance, maintenance and alimony, remaining personalty, and attorney fees.

The supplemental judgment was based on Lorrie's written closing argument. In it, Lorrie discussed all the contested issues. First, she argued that property purchased prior to marriage, but in contemplation of marriage, should be classified as marital property. Therefore, she contended, "the marital residence should be determined to be marital property." Next, she contended that the entire Precious Moments collection (with the exception of one) was her nonmarital property. She argued that some of the pension accounts were

marital property. She argued that the cars were marital property. She argued that the children's coin collection belonged to the children. She argued that the craft supplies were nonmarital property. She argued that some of the debts were marital, while some others, most importantly the $20,000 used as a down payment on the house, were not.

Coupled with the court's supplemental judgment, it is clear the trial court, in distributing the assets, implicitly made findings consistent with Lorrie's closing argument. Therefore, Martin's argument that the trial court made no findings of fact is without merit.

■ With respect to the distribution effected by the court, Martin acknowledges a trial judge does not have to divide property equally. He also acknowledges by reply brief that, excluding the disputed $20,000, discussed below, the property was divided 40% to him and 60% to Lorrie.

It is the province of the trial judge to determine the credibility of witnesses. *People v. Seawright*, 228 Ill. App. 3d 939, 965, 593 N.E.2d 1003, 1020 (1992). The court's findings will not be disturbed unless manifestly against the weight of the evidence. *In re Marriage of Hofstetter*, 102 Ill. App. 3d 392, 396, 430 N.E.2d 79, 82 (1981). Martin's counsel brought to the court's attention the "eleven [*sic*]" factors of section 503 of the Marriage and Dissolution Act (Act) (750 ILCS 5/503(d)(1) through (d)(12) (West 1994)). We find the court properly exercised its discretion in assessing the credibility of witnesses and made a just distribution of property in conformance with the mandates of section 503 of the Act. 750 ILCS 5/503(i) (West 1994). In particular, the trial court quite properly took into consideration Lorrie's testimony that she had to expend extra funds because of Martin's uncooperative behavior. The court's distribution of property is not inequitable, and we refuse to disturb it on this appeal.

The trial court's supplemental judgment did not assign values to the various items of property which were awarded. According to Martin's calculations, however, Lorrie received assets worth $46,010.50, and he received assets worth $30,543, before deducting the $16,600 debt to his father which he was required to pay. Martin's argument places no value, however, on the nonmarital portion of his retirement plan. Lorrie has no retirement plan because her plan was cashed out ($13,346) and used by the parties during the marriage. The trial court specifically noted that fact in its supplemental judgment. The trial court also would have been warranted in valuing the nonmarital debt to Martin's father at something less than its face amount. It is not clear that Martin's father will expect or demand that Martin pay the $16,600. In dissolution cases, courts are entitled

to be skeptical of transactions between a litigant and his parents. *Hofmann v. Hofmann*, 94 Ill. 2d 205, 222, 446 N.E.2d 499, 506 (1983); *In re Marriage of Schmidt*, 242 Ill. App. 3d 961, 968, 610 N.E.2d 673, 678 (1993).

### C. Alleged Failure to Consider Reimbursement of $20,000 Down Payment

■ The trial court found that the $20,000 which Martin received from his father was a nonmarital debt which Martin alone was required to pay. Martin argues that, even accepting that Lorrie was not obligated on that loan, the $20,000 was his nonmarital property, and when he contributed that property to the marital residence he became entitled to reimbursement.

Section 503(c)(2) of the Act provides:

> "When one estate of property makes a contribution to another estate of property, or when a spouse contributes personal effort to non-marital property, the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation; provided, that no such reimbursement shall be made with respect to a contribution which is not retraceable by clear and convincing evidence, or was a gift ***." 750 ILCS 5/503(c)(2) (West 1992).

The residence was purchased in July 1984, and the parties lived in it until they separated in April 1992. During that period of time, the parties spent money to maintain the residence. They also made payments of principal and interest on the mortgage. The parties clearly have spent more than $49,000 of their own or borrowed funds in connection with their home. Why should Martin receive reimbursement in full for his $20,000, and why should the funds contributed by the marriage be viewed as somehow subordinate to that? Why should Martin be entitled to his $20,000 off the top? The answer is that he is not. Section 503(c)(2) requires that Martin trace the effect of his $20,000 into the current value of the residence by clear and convincing evidence. The trial court was entitled to conclude that he has not done so.

Martin had an obligation to provide shelter for his family. There is a presumption that transfers between husband and wife are gifts. *In re Estate of Glogovsek*, 248 Ill. App. 3d 784, 793-94, 618 N.E.2d 1231, 1239 (1993). There is no indication in the present case that Martin exercised exclusive control over the $20,000 or made it clear that he expected to receive the $20,000 back when the property was sold in any different fashion than he would receive back a marital contribution. Lorrie also contributed her nonmarital property, her retirement benefits, to the marriage. The trial court was entitled to conclude that Martin made a gift of the $20,000 to the marriage.

## III. CONCLUSION

The trial court did not err in dividing the parties' property. Accordingly, its judgment is affirmed.

Affirmed.

STEIGMANN and KNECHT, JJ., concur.