2023 IL App (2d) 210351-U
No. 2-21-0351
Order filed September 6, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re MARRIAGE OF TODD HORLBECK, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Petitioner-Appellee, | ) ) | |
| and | ) ) | No. 18-D-60 |
| LAURA HORLBECK, | ) ) ) | Honorable William J. Parkhurst, |
| Respondent-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE McLAREN delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's findings that two homes were marital properties and that the husband's attorney's fees relating to business litigation was marital debt were not against the manifest weight of the evidence. Trial court is affirmed.

¶ 2    Respondent, Laura Horlbeck, appeals from an amended judgment dissolving her marriage to petitioner, Todd Horlbeck. Laura contends that the trial court erred by (1) classifying a vacation home as marital property, and (2) classifying business and bankruptcy related attorney's fees as marital debt. For the following reasons, we affirm.

¶ 3                                I. BACKGROUND

¶ 4      The parties married in 1994. Three children were born to the marriage. In 2002 the parties acquired a vacation home in Hayward, Wisconsin, and the marital residence in St. Charles, Illinois. The homes were purchased with marital funds. In January 2018, Todd filed a petition for dissolution.

¶ 5      In December 2018, Laura filed a complaint for declaratory judgment alleging the following. On August 6, 2015, Laura filed in the Kane County Circuit Court, a petition for dissolution of marriage (no. 2015 D 993). On August 21, 2015, Todd filed for Chapter 7 bankruptcy. On the schedule of assets, requiring disclosure of real estate that Todd owned or had an interest in, he answered, "none." Contrary to the position Todd took under oath in the bankruptcy court, Todd maintains in this dissolution of marriage action that the real estate he previously conveyed to Laura is marital property. If Todd had an interest in the properties, he was obligated to disclose it in schedule A of his bankruptcy petition. Laura sought a declaration that the real estate, owned by her, in her own name, was her sole and separate nonmarital asset.

¶ 6      Todd responded that he never received Laura's August 21, 2015, petition for dissolution, never received summons on the petition, never filed an appearance; and did not know Laura's petition had been filed until after it was voluntarily withdrawn or non-suited on September 30, 2015. Todd also stated that the two properties at issue were purchased during the marriage with marital funds and were titled in joint tenancy or tenants in the entirety. Todd also denied that he was required to list the properties in schedule A of his bankruptcy petition. He also stated that it was his belief and understanding, and the instruction of his attorney, that he was not to list any property titled solely in Laura's name.

¶ 7      In February 2019, Todd filed a petition for a temporary restraining order and preliminary injunction alleging that the Wisconsin vacation home had been sold and that Laura had sole control

over the proceeds from the sale. The remaining property and the sale proceeds represented most of the marital estate. Todd sought a temporary restraining order, followed by a preliminary injunction enjoining Laura from transferring, assigning, concealing, etc., any property in which the parties have any interest, without a written agreement of the parties or a court order.

¶ 8    In November 2019, in a written order the trial court denied Todd's motion for a temporary restraining order. However, "on the court's motion," it prohibited Laura from selling, transferring, or encumbering the St. Charles property and from using the sale proceeds of the Wisconsin property for extraordinary expenses. On Laura's motion for reconsideration, the trial court modified its order providing that if the St. Charles property was sold, the proceeds would be escrowed. The court also restrained Laura from disposing of the sale proceeds from the Wisconsin property, except for the usual course of business or necessities of life including expenses for the minor child and college expenses.

¶ 9    In October 2020 Laura filed a motion for partial summary judgment seeking a declaration that the two homes were her non-marital property as a matter of law. Laura argued that Todd should be judicially estopped from claiming the two homes as marital property because he failed to list them in his bankruptcy schedule A. Laura attached Todd's bankruptcy petition, including schedule A.

¶ 10    In response, Todd filed an affidavit wherein he averred, in part, the following. In 2002 both homes were purchased during the marriage, with marital funds. In 2009 the properties were transferred into Laura's name for estate planning purposes. The transfers were not gifts. Todd was never served with and was unaware of Laura's August 6, 2015, petition for dissolution of marriage until after it was non-suited on September 30, 2015. On August 15, 2015, he filed a petition for chapter 7 bankruptcy (11 U.S.C. § 101 (2012)) in the United States District Court for the Northern

District of Illinois. In his "memorandum of law in support of denial of [Laura's] motion for partial summary judgment," citing section 750(e) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/750(e) (West 2020)), Todd argued that a marital interest does not vest until dissolution proceedings are commenced.

¶ 11    In December 2020 the trial court denied Laura's motion for partial summary judgment.

¶ 12    The trial court heard testimony from the parties for three days at the end of January 2021. At that time, two of the children were already emancipated, and the youngest child was a senior in high school.

¶ 13    The record on appeal contains no transcript of the trial proceedings, as no court reporter was present. Instead, the parties submitted a bystander's report, which was certified by the trial court as an accurate report of the proceedings, as permitted by Illinois Supreme Court Rule 323(c) (eff. July 1, 2017). Accordingly, our knowledge of the trial proceedings is limited to the information provided in the bystander's report.

¶ 14    The bystander's report states, "Judicial notice was taken of the court file." Further, prior to the trial, the court and counsel agreed that the parties' exhibits would be admitted without objection or the need to lay a foundation, and the court would "consider the weight to be given each exhibit." The exhibits included "the invoice for attorney's fees by John Burke." The bystander's report indicates that only Todd and Laura testified.

¶ 15    Todd testified that he had moved to Colorado and was working as a plumber's apprentice. He had a degree in finance from the University of Wisconsin. During the marriage the parties bought, with marital funds, a vacation home in Wisconsin and their marital residence in St. Charles. In 2009 Todd deeded the properties to Laura solely for tax planning purposes, via quit claim deed. Todd indicated that the parties never intended the transfers to be gifts and always

considered the properties "owned" by both parties. The Wisconsin home had been sold, and he did not receive any of the sale proceeds. Todd testified that Zillow valued the St. Charles marital home at $1 million; the numerous upgrades should place the value over $1.1 million.

¶ 16     Todd testified that when he filed bankruptcy schedules in 2015, he did not list the two homes, or the businesses, as assets. Todd explained that his bankruptcy attorney and the directions on the schedules instructed him to list all property in which he had an ownership interest, and not property that was in his spouse's name or in which he had a marital interest. The bankruptcy trustee was aware of those assets in Laura's name and never indicated that Todd had done anything wrong or improper.

¶ 17     Todd also testified that he was a "judgment debtor in *Tillman Enterprises v. Todd Horlbeck*, DuPage County No. 13L547, and owed Tillman approximately $1,557,000." Tillman Enterprises was an investor in Todd's failed hedge fund.

¶ 18     Todd further testified that he had also managed three businesses, of which he was a 50% owner, until Laura fired him. The three businesses were private loan companies that made high-interest loans. In his April 2019 financial affidavit, he valued the three businesses at $6,395,000. Todd testified that at the time of trial he believed the businesses had either no value or a negative valuation due to the recently enacted State laws regulating high-interest loans. Todd's debts were $40,000 to his divorce attorney and $185,000 to John Burke, his business attorney.

¶ 19     Laura testified that she had an investment account, an I.R.A. account, and two bank accounts. She failed to refute Todd's testimony regarding the timing, purchase, or deeding of the two homes. Laura opined that the St. Charles marital residence was worth approximately $804,000. She based her opinion on her experience as a realtor and various documents. One of her bank accounts held the proceeds from the sale of the Wisconsin home. The proceeds originally were

$359,901, but by August 2020, only $39,786 remained, and that amount had been reduced further by the time of trial. Laura spent the money on "household expenses, child expenses, college costs and her legal fees." Todd left the marital home in 2016 and provided no support to Laura and their children thereafter. Laura paid no support to Todd who had been unemployed, and she gave him no profits from their businesses.

¶ 20    Laura also testified that Todd created the businesses during the marriage, although they were titled in her name, and he ran them until February 2018, when Todd was fired from each of the businesses. Laura had no opinion regarding the values of the businesses.

¶ 21    On March 16, 2021, the trial court entered its judgment of dissolution. The court stated that it "made careful evaluation of the credibility and demeanor of the parties as they testified at trial. The division of assets, debts, and the determinations of other issues is based upon that credibility determination." The parties stipulated that all exhibits would be admitted into evidence and the parties would argue the weight the court should give each exhibit. The court found that Todd "made a significant contribution to" Laura and the parties' children in that the Wisconsin property was sold and Laura "had access to and used the proceeds of that sale for her maintenance and the support of the children."

¶ 22    Regarding the debt owed to attorney John Burke, the court found:

> "The payment of $185,000 to attorney John Burke, [Todd's] former business attorney, may appear to be an anomaly in the division of debts. It is not. The uncontroverted testimony from [Laura] was that her attorney had been paid out of marital funds to defend her in the DuPage County business litigation. The payment out of marital funds of [Todd's] attorney's fees for defense of the business litigation is reasonable and necessary."

¶ 23    Regarding the St. Charles "marital residence," the trial court ordered the home, which was not subject to mortgage, to be listed, marketed, and sold by Laura, with the net proceeds to be divided as follows: $250,000 to be placed in the children's trust; each divorce attorney to be paid their reasonable and necessary fees and costs; $15,000 to be awarded to Todd; $185,000 to be paid to attorney John Burke; and all remaining proceeds to be awarded to Laura.

¶ 24    On April 6, 2021, Laura filed a posttrial motion arguing the following. The trial court erred when, before trial, it denied her motion for partial summary judgment based on judicial estoppel. During the trial Laura renewed her motion for partial summary judgment. However, the trial court erred by failing to classify the two homes as marital or non-marital property. Because the trial court failed to classify the homes, the court never considered "whether Todd should be estopped from denying that he lied to the bankruptcy court." The court failed to classify the businesses as marital or non-marital. The court's finding regarding Burke's attorney fees was "plain error."

¶ 25    On May 18, 2021, after a hearing, the trial court granted in part and denied in part Laura's posttrial motion finding (1) based on the parties' testimony, the Wisconsin vacation home and the St. Charles home were properly found to be marital property; 2) Laura's motion for partial summary judgment based upon judicial estoppel was considered and denied; 3) Laura failed to overcome the presumption that the I.R.A. was marital property; and 4) attorney Burke's invoice was properly admitted into evidence.

¶ 26    On May 26, 2021, the trial court entered an amended judgment of dissolution. The court stated that the parties stipulated that all exhibits would be admitted into evidence and the parties would argue the weight the court should give each exhibit. The court found that Todd "made a significant contribution to" Laura and the parties' children in that the Wisconsin property was sold and Laura "had access to and used the proceeds of that sale for her maintenance and the support

of the children." The court stated that it "made careful evaluation of the credibility and demeanor of the parties as they testified at trial. The division of assets, debts, and the determination of other issues [are] based upon that credibility determination." The court reaffirmed its findings that the Wisconsin and St. Charles homes, and the businesses, were marital property. The court reaffirmed its March 16, 2021, finding regarding the payment of $185,000 to attorney Burke. This timely appeal followed.

¶ 27                                            II. ANALYSIS

¶ 28                              A. Classification of Marital Property

¶ 29    Laura argues that the court erred in designating two homes as marital property, rather than as her nonmarital property. She contends that the homes were gifts to her because Todd conveyed the properties to her by quit claim deeds in 2009 and they remained in her name alone thereafter. Todd responds that Laura presented no evidence that he gifted the homes to her.

¶ 30    The disposition of property in a dissolution of marriage proceeding is governed by section 503 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503 (West 2020)). All property owned by the parties in a dissolution proceeding belongs to one of three estates—the husband's estate, the wife's estate, or the marital estate. *In re Marriage of Werries*, 247 Ill. App. 3d 639, 641-42 (1993). Before a court may dispose of property upon the dissolution of marriage, it must determine whether the property is marital or non-marital. *In re Marriage of Henke*, 313 Ill. App. 3d 159, 166 (2000). A trial court's classification of property as marital or non-marital will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 44. A decision is against the manifest weight of the evidence only when an opposite conclusion is clearly apparent or when the court's findings appear to be unreasonable, arbitrary, or not based on the evidence. *Id.*

¶ 31    Under the Act there is a rebuttable presumption that all property acquired by either spouse during the marriage is marital, regardless of whether title is held individually. 750 ILCS 5/503(b)(1) (West 2020); *Romano*, 2012 IL App (2d) 091339, ¶ 45. The presumption of marital property can be overcome by clear and convincing evidence that the property was acquired by one of the methods listed in section 503(a) of the Marriage Act (750 ILCS 5/503(a) (West 2020)), which is the exclusive list of non-marital property. *In re Marriage of Smith*, 86 Ill. 2d 518, 528 (1981). The burden of proof is on the party claiming that the property is non-marital. *In re Marriage of Schmitt*, 391 Ill. App. 3d 1010, 1017 (2009). "Any doubts as to the nature of the property are resolved in favor of finding that the property is marital." *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 77.

¶ 32    Here, Laura claims that the "non-marital property" exception that applies here is "(1) property acquired by gift[.]" 750 ILCS 5/503(a)(1) (West 2020). Laura incorrectly asserts that because Todd executed quit claim deeds to her, it was Todd's burden to overcome the presumption that he gifted the homes to her. Laura cites *In re Marriage of Marx*, 281 Ill. App. 3d 897 (1996), and *In re Marriage of Lee*, 246 Ill. App. 3d 628 (1993), to support her argument.

¶ 33    *Marx* concerns section 503(c)(2) of the Act and the transmutation of nonmarital property into marital property. *Marx*, 281 Ill. App. 3d at 902. See also *In re Marriage of Olson*, 96 Ill. 2d 432, 436 (1993) ("The principle of transmutation is based on the presumption that the owner of the nonmarital property intended to make a gift of the property to the marital estate."). In *Marx*, the husband contributed $20,000 of nonmarital funds to a down payment on a home bought by the parties in contemplation of marriage. *Marx*, 281 Ill. App. 3d at 900. The husband argued that he was entitled to the $20,000 because it was nonmarital property. *Id.* at 902. The appellate court disagreed with the husband, citing section 503(c)(2) of the Act. *Id.* Section 505(c)(2) provided:

"When one estate of property makes a contribution to another estate of property, *** the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation; provided, that no such reimbursement shall be made with respect to a contribution that is not retraceable by clear and convincing evidence or that was a gift[.]" 750 ILCS 5/503(c)(2) (West 1992). The husband failed to present evidence that he "exercised exclusive control over the $20,000 or made it clear that he expected to receive the $20,000 back when the property was sold in any different fashion than he would receive back a marital contribution." *Marx*, 281 Ill. App. 3d at 902. Therefore, the appellate court held that "the trial court was entitled to conclude that [the husband] made a gift of the $20,000 to the marriage." *Id.*

¶ 34　This case has nothing to do with transmutation of nonmarital property into marital property. Laura does not claim that her nonmarital funds were used to purchase the homes. Rather, she concedes that the homes were purchased with marital funds. She argues that Todd's quit claim deeds changed the marital properties into nonmarital properties. *Marx* is distinguishable from this case.

¶ 35　*Lee* is also distinguishable from this case. In *Lee*, the husband bought a diamond sapphire ring with marital funds and gave it to the wife with a note stating that the wife was entitled to keep the ring as long as she remained married to the husband. *Lee*, 246 Ill. App. 3d at 639. On appeal, the husband argued that the trial court erred by awarding the ring to the wife because the ring was a conditional gift and the wife failed to comply with the condition. *Id.* The court stated that the husband was "not empowered to make the unilateral determination regarding ownership of property purchased with marital funds." *Id.* at 640. For those reasons, the appellate court held that the ring was *marital property* and that the trial court did not err by allocating it to the wife. *Id.*

¶ 36    We fail to understand how *Lee* supports Laura's argument. The *Lee* court did not determine that the ring was a gift to the wife and, therefore, the wife's nonmarital property. This case does not support Laura's argument that Todd bears the burden to overcome the presumption that he gifted the homes to her.

¶ 37    Here, there is no dispute that the parties acquired the two homes at issue after Laura and Todd married. Therefore, although after November 2009 the homes were titled in Laura's name alone, there was a rebuttable presumption that these homes were marital properties. 750 ILCS 5/503(b)(1) (West 2020). See also *In re Marriage of Klose*, 2023 IL App (1st) 192253, ¶ 18 ("There is a rebuttable presumption that property acquired after marriage but before the dissolution of marriage is marital property regardless of how the property was held."). Laura had the burden to overcome this presumption by proving by clear and convincing evidence that Todd gifted the homes to her. *Id.*

¶ 38    It is possible for one spouse to make a gift of marital property to the other spouse that the recipient could then claim as non-marital property. *In re Marriage of Severns*, 93 Ill. App. 3d 122, 125 (1981). A gift is the voluntary gratuitous transfer of property from donor to donee where the donor manifests an intent to make such a gift and absolutely and irrevocably delivers the property to the donee. *Romano*, 2012 IL App (2d) 091339, ¶ 51. A gift requires proof of donative intent and delivery of the property. *Hluska*, 2011 IL App (1st) 092636, ¶ 78. The evidence most relevant in determining donative intent is the donor's own testimony. *In re Marriage of Didier*, 318 Ill. App. 3d 253, 263 (2000).

¶ 39    Laura claims that Todd's failure to list the homes in his bankruptcy petition was evidence of donative intent. Laura claims that Todd failed to list the homes in his bankruptcy petition

because he knew that he had no interest in the homes as he had transferred his interests to Laura in November 2009.

¶ 40    *Severns*, 93 Ill. App. 3d 122 (1981), is instructive. In *Severns*, the parties jointly purchased real property during the marriage, and held title in joint tenancy. *Id.* at 123. During the marriage, the wife executed a quit claim deed to the husband of her interest in the real property. *Id.* at 124. The wife testified that she executed the deed to please her husband and to save her marriage. *Id.* Upon dissolution, the trial court found that the real property was marital property. *Id.* The appellate court held that the property was presumed to be marital property because it was acquired after the marriage. *Id.* at 125. The court also held that the presumption could be overcome only by clear, convincing, and unmistakable evidence. *Id.* at 125-26. The court concluded that the husband failed to sustain his burden. *Id.* at 125.

¶ 41    Here, like *Severns*, Laura failed to sustain her burden that the homes were her nonmarital property. Laura presented no evidence to establish that Todd had donative intent when he provided her with quit claim deeds. Conversely, Todd testified that the transfer of the homes to Laura via quit claim deeds was done solely for estate planning purposes. Todd explained that the parties never intended the transfers of the properties to be a gift and always considered the properties owned by both parties. Todd testified that he did not list the homes in the schedule of assets in his bankruptcy petition because his bankruptcy attorney and the directions on the schedule indicated he should not list them. Todd also testified that the bankruptcy trustee knew about the homes and did not indicate that Todd had done anything improper. On this record and giving deference to the credibility and weight of the evidence assessed by the trier of fact, we cannot say that the trial court's decision to classify the two homes as marital property was against the manifest weight of the evidence.

¶ 42    In a closely related argument, Laura claims that because Todd failed to list the homes in his bankruptcy petition, he is judicially estopped from asserting any interest in the homes. Todd counters that the trial court properly exercised its discretion by refusing to apply judicial estoppel.

¶ 43    Judicial estoppel is an equitable doctrine. *Seymour v. Collins*, 2015 IL 118432, ¶ 36 Its purpose is to protect the integrity of the judicial system by preventing "parties from 'deliberately changing positions' according to the exigencies of the moment." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). Judicial estoppel applies when a party takes a position, benefits from it, and then attempts to take a contrary position in a subsequent proceeding. *Id.* Further, it is an extraordinary remedy that should be applied with caution. *Construction Systems, Inc. v. FagelHaber, LLC*, 2015 IL App (1st) 141700, ¶ 38. We review a court's decision on whether to apply the doctrine of judicial estoppel for an abuse of discretion. *Seymour*, 2015 IL 118432, ¶ 48.

¶ 44    The framework for ascertaining whether judicial estoppel should bar a claim is a two-step process. *Seymour*, 2015 IL 118432, ¶ 47. First, the trial court must determine whether the party to be estopped has (1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) succeeded in the first proceeding and received some benefit. *Id*. Judicial estoppel must be proved by clear and convincing evidence. *Id.* ¶ 39

¶ 45    Second, if all five factors are found present, the trial court must then exercise its discretion to decide whether to apply judicial estoppel. *Id.* ¶ 47. Numerous factors may inform a court's decision, such as "the significance or impact of the party's action in the first proceeding, and *** whether there was an intent to deceive or mislead, as opposed to the prior position having been the result of inadvertence or mistake." *Id.* Our supreme court has recognized that whether a party

intended to deceive or mislead the court is "a critical factor in the application of judicial estoppel," and has also noted that even if all five prerequisites are present, intent to deceive or mislead is not necessarily present because inadvertence or mistake may account for positions taken and facts asserted. *Id.* ¶¶ 47, 54.

¶ 46    Here, even assuming that all five factors are present, Laura failed to prove by clear and convincing evidence that Todd intended to deceive or mislead the bankruptcy court. In *Seymour*, our supreme court refused to presume the debtors' failure to disclose a pending lawsuit in bankruptcy proceedings was the result of deliberate manipulation. *Id.* ¶ 62. We take the same position here. Laura offers only speculation that Todd intended to deceive or mislead the bankruptcy court, "a critical factor in the application of judicial estoppel." *Id.* ¶ 54. Laura urges us to infer that Todd knew he had to disclose the two homes because schedule A of the bankruptcy petition instructed him to list all real property in which he had "any legal, equitable or future interests." However, at trial, Todd testified that that his bankruptcy attorney and directions on the schedules instructed him to list all property in which he had an ownership interest, and not property that was in Laura's name or property in which he had only a marital interest. Todd also testified that the bankruptcy trustee was aware of the two homes and that the trustee never indicated that Todd had done anything wrong or improper.

¶ 47    Given these facts, we determine that Todd's failure to disclose the Wisconsin and St. Charles homes on the bankruptcy schedule is insufficient, in itself, to warrant the application of judicial estoppel. Where, as here, there is affirmative evidence that Todd did not deliberately change positions according to the exigencies of the moment, that he did not employ intentional self-contradiction as a means of obtaining unfair advantage, the purpose of the doctrine of judicial

estoppel is not advanced by the application of the doctrine. See *id.* ¶ 63. Therefore, it was well within the trial court's discretion to decline the application of judicial estoppel under these facts.

¶ 48          B. Classification and Distribution of Debt Owed to Attorney Burke

¶ 49    Next, Laura contends that the trial court erred by classifying Burke's attorney fees as marital debt. Again, a trial court's classification of property as marital or non-marital will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Romano*, 2012 IL App (2d) 091339, ¶ 44. A decision is against the manifest weight of the evidence only when an opposite conclusion is clearly apparent or when the court's findings appear to be unreasonable, arbitrary, or not based on the evidence. *Id.*

¶ 50    Debt is a type of property for the purposes of the Act. 750 ILCS 5/503(a) (West 2020). Section 503(b)(1) of the Act provides: "For purposes of distribution of property, all property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage is presumed marital property." 750 ILCS 5/503(b)(1) (West 2020). This presumption may be overcome by a showing through clear and convincing evidence that the debt was acquired by a method listed in section 503(a) of the Act. *Id.*

¶ 51    Laura does not argue that any of the methods listed in section 503(a) apply to overcome the presumption that the debt was marital. Rather, she argues that the trial court erred by finding that Burke's attorney's fees were marital debt because the court found that the debt owed to Tillman was non-marital debt. Laura, therefore, contends that Burke's fees incurred in defending the Tillman litigation should not be marital debt either.

¶ 52    The record indicates that Todd incurred Burke's attorney's fees for business litigation, including the bankruptcy that was affected to discharge business debt, and that Burke's charges were reasonable and necessary. Further, the parties stipulated that Burke's invoice would be

admitted like all other exhibits. Burke's invoice indicated that his fees were incurred during the marriage; between September 2018 and April 2019. Laura failed to present any evidence to overcome the presumption that Burke's fees were anything but marital debt. Accordingly, the trial court's classification of $185,000 of Burke's attorney's fees as marital debt was not against the manifest weight of the evidence.

¶ 53    Although the record is clear that Burke's attorney's fees were incurred during the marriage, and are therefore, presumed to be marital debt, Laura cites nothing in the Act to overcome the presumption. Indeed, Laura cites no Illinois authority to support her argument. Instead, she cites cases from our sister states that held that debts arising from criminal activity were not marital debts: *Harasym v. Harasym*, 418 Pa. Super. 486, 614 A. 2d 742 (1992) and *Curda-Derickson v. Derickson*, 266 Wis. 2d 453, 668 N.W. 2d 736 (Wis. App. 2003). However, decisions from our sister state courts are not binding on our courts. *In re Scartlett Z.-D.*, 2015 IL 117904, ¶ 55. Further, these cases are not persuasive because they do not reflect Illinois law.

¶ 54    The *Harasym* court placed the burden on the husband to prove that a settlement with the government in connection with allegations of Medicare fraud was marital debt. *Harasym*, 418 Pa. Super. at 494. That is not the law in Illinois. Illinois law provides that all debts incurred during marriage are presumed marital, and a party must produce clear and convincing evidence to overcome the presumption. 750 ILCS 5/503 (West 2020). In *Curda-Derickson*, the court held that restitution for the husband's embezzlement was not marital debt based on a state statute that expressly excluded such debt as marital. *Curda-Derickson*, 266 Wis. 2d at 468. In Illinois, no similar statutory provision exists. Because these cases do not reflect Illinois law, they are not persuasive. *Scartlett Z.-D.*, 2015 IL 117904, ¶ 55.

¶ 55    Laura also contends that the trial court failed to make a specific finding that Burke's attorney's fees were marital debt. Laura ignores that the trial court found the business interests were marital property and that:

> "The payment of $185,000 to attorney John Burke, [Todd's] former business attorney may appear to be an anomaly in the division of debts. It is not. The uncontroverted testimony from [Laura] was that her attorney had been paid out of the marital funds to defend her in the Du Page County litigation. The payment out of marital funds of [Todd's] attorney's fees for defense of business litigation is reasonable and necessary."

Therefore, the trial court found that Burke's attorney's fees were marital debt and that finding was not against the manifest weight of the evidence.

¶ 56    Finally, we address Laura's claim that the court erred by awarding Burke attorney fees because section 508(a) of the Act (750 ILCS 5/508(a) (West 2020)) permits awards of attorney fees only for attorneys involved in the divorce and related ancillary proceedings. However, nothing in the record, including the judgment of dissolution, indicates that the trial court based its finding and award on section 508(a). Rather, the court ordered the "payment out of marital funds of [Burke's] attorney's fees for the defense of the business litigation." Therefore, section 508(a) is not applicable, here.

¶ 57                                III. CONCLUSION

¶ 58    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 59    Affirmed.